SPANN v. CITY OF DALLAS et al.*
(No. 7591.)

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1916. Rehearing Denied Dec. 9, 1916.)

1. MUNICIPAL CORPORATIONS ⊛⟶601—BUILDING ORDINANCE — VALIDITY — RETROACTIVE CHARACTER.

An ordinance of the city of Dallas, restricting the erection of business buildings in the resident part of the city was not illegal as to plaintiff because, prior to the passage of the ordinance, plaintiff had asked for a permit to build a storehouse, but had not started the erection of his building, since to be retroactive the ordinance must have affected some vested right of plaintiff's.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1333; Dec. Dig. ⊛⟶601.]

2. MUNICIPAL CORPORATIONS ⊛⟶589 — "POLICE POWER."

Laws essential for the welfare, good order, and prosperity of the citizens resident in a city fall within the "police power" of the government.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1308, 1319; Dec. Dig. ⊛⟶589.

For other definitions, see Words and Phrases, First and Second Series, Police Power.]

3. MUNICIPAL CORPORATIONS ⊛⟶591—BUILDING ORDINANCE—CONSTRUCTION.

A building ordinance of the city of Dallas, adopted pursuant to City Charter, art. 2, § 1, subsec. 2, which provided that it should be unlawful to locate or construct any business house or building within any residence portion of the city except with the consent of three-fourths of the property owners within a radius of 300 feet, etc., and providing that application for permit should be accompanied with the consent of three-fourths the property owners within 300 feet, when all provisions were construed together, did not leave the final decision with three-fourths of the residents of any district, but left it for the commissioners to determine whether or not building permit should issue.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1310; Dec. Dig. ⊛⟶591.]

4. MUNICIPAL CORPORATIONS ⊛⟶111(4) — BUILDING ORDINANCE—PARTIAL INVALIDITY.

Though a section of a building ordinance providing for consent of property owners of a residence district before erection of a business building therein be obnoxious to the Constitution and laws, if it does not affect the other provisions of the ordinance prescribing the character of buildings, the remaining portions are valid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 248–251; Dec. Dig. ⊛⟶111(4).]

5. MUNICIPAL CORPORATIONS ⊛⟶122(3) — BUILDING ORDINANCE — VALIDITY — EVIDENCE.

In suit by property owner for mandamus to compel issuance of building permit and for injunction restraining interference with erection of storehouse in city of Dallas, despite building ordinance of the city regulating erection of business buildings in residence district, testimony that the location of suburban stores in residence sections detracts from comfort and convenience, and destroys value of the home, was admissible.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 287; Dec. Dig. ⊛⟶122(3).]

Talbot, J., dissenting.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit for writ of mandamus and for writ of injunction by John R. Spann against the City of Dallas and H. J. Emmins. From a judgment denying the writs, plaintiff appeals. Judgment affirmed.

Read, Lowrance & Bates, of Dallas, for appellant. C. F. O'Donnell and Barry Miller, both of Dallas, for appellees.

RAINEY, C. J. John R. Spann, appellant, instituted this suit against the city of Dallas and H. J. Emmins for the writ of mandamus to compel the issuance of a building permit by Emmins to him for the erection of storehouses upon lots of his at the northwest corner of Ross and Fitzhugh avenues in the city of Dallas, and for a writ of injunction restraining the defendants and their agents from interfering in the erection of said houses or arresting him for engaging in such work. A hearing was had and the writs of mandamus and injunction were denied, and this appeal was taken.

On May 17, 1915, appellant bought the piece of ground at said corner, which was vacant, with the intention to erect storehouses thereon, and learned from the city attorney that there was no law prohibiting the erection of same on such lot. Soon thereafter, during the first part of June, he approached Otto Lang, commissioner of streets and buildings, and asked for a permit to build such a house, but was refused, Lang stating that "we are waiting to hear from the other citizens in that neighborhood." Afterward appellant made a request of defendant Emmins, building inspector, for a permit to build such a house, which was refused by Emmins because of instructions from Lang, commissioner, not to issue it.

On July 19, 1915, an ordinance was adopted by the city commissioners prohibiting the building of business houses in the resident part of the city without the application was accompanied with the consent of three-fourths of the property owners within a radius of 300 feet of the center of such location.

Appellant seeks to recover in this action upon two theories:

First: "His right to erect storehouses upon his lot is a valuable property right, and, having asserted this right and demanded a building permit at a time when there was no law, either in statute or ordinance, forbidding the erection of such structures, this right became fixed as of the date when he first applied for such building permit, and could not be taken away or limited by the ordinance thereafter adopted by the city, and he is entitled to a writ of mandamus to compel the issuance of the building permit, and to an injunction restraining the city from interfering with his building operations, without regard to the ordinance of July 19, 1915."

Second: "The ordinance adopted by the city July 19, 1915, presents no obstacle to the granting of the relief sought by the plaintiff because it is void on constitutional and other grounds."

[1] These theories embody all the right, if any, of recovery by appellant and will be treated in their order. The first, in effect, invoked the principle of the passage of the ordinance of July 19, 1915, as retroactive, and therefore did not affect his right to erect a storehouse on said lot. For the ordinance to be retroactive it must affect some vested right of appellant in the use of the lot as he desired by reason of his intention to erect thereon a storehouse and make application for a permit to build prior to the passage of

the ordinance. The ordinance, as passed, only applied to property in its then condition and to its future use. The appellant had not started the erection of a building for use as a storehouse, and we see no difference in his ownership of said lot than the ownership of any other citizen to any other residence lot in the city of Dallas, so the ordinance is not illegal in that respect, and the question resolves itself into his second contention, which, in effect, is that it was beyond the powers of the board of commissioners to enact such an ordinance as here relied on by the defendants, which prohibits the erection of buildings for business purposes under certain restrictions.

[2-4] The charter of the city of Dallas was granted it by the Legislature of the state of Texas, and its authority to act in this matter was given it by subsection 2 of section 1, art. 2, of its charter, which provides:

"The city of Dallas shall have power to enact and to enforce ordinances necessary to protect health, life and property and to prevent and summarily abate and remove nuisances, and to preserve and enforce the good government, order and security of the city and its inhabitants; to protect the lives, health and property of the inhabitants of the said city; and to enact and enforce any and all ordinances upon any subject: Provided, that no ordinance shall be enacted inconsistent either with the laws of the state of Texas, or inconsistent with the provisions of this act: And provided, further, that the specification of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this act to grant and bestow upon the inhabitants of the city of Dallas full power of self government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general law of the state of Texas, or by the provisions of the Constitution of the state of Texas."

This clause of the charter was evidently intended by the Legislature to empower the city of Dallas to pass all laws essential for the welfare, good order, and prosperity of the citizens resident therein. Such laws fall within what is known as the police powers of the government. The extent to which the police powers of the government will be carried in the enforcement of the welfare of its citizens is not susceptible of precise determination, but it must be limited to exigencies of each case. In the case of Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. 501, 59 L. Ed. 835, where the question of police powers was involved, in an opinion by Mr. Justice Day, the court said:

"The limitations upon the police power are hard to define, and its far-reaching scope has been recognized in many decisions of this court. At an early day it was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the state, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the state. New York v. Miln, 11 Pet. 102, 139, 9 L. Ed. 648, 662. The police power, in its broadest sense, includes all legislation and almost every func-

tion of civil government. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. Camfeld v. United States, 167 U. S. 518, 524, 17 Sup. Ct. 864, 42 L. Ed. 260, 262. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 592, 26 Sup. Ct. 341, 50 L. Ed. 596, 609, 4 Ann. Cas. 1175. In one of the latest utterances of this court upon the subject it was said: 'Whether it is a valid exercise of the police power is the question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity, * * * and further, "it is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." ' Eubank v. Richmond, 226 U. S. 137, 33 Sup. Ct. 76. 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192."

In the case of Reinman v. Little Rock, 237 U. S. 170, 35 Sup. Ct. 511, 59 L. Ed. 900, a brick livery stable conducted in the business district was declared by ordinance to be detrimental to the health, interest, and prosperity of the city, and which required its removal, but it was contended by the defendant that the conducting of such business at that place had been encouraged by the city of Little Rock and expenditures made; that the passage of the ordinance was procured by parties desiring to purchase the property; that the building was useful for no other purpose and no other site was procurable for its location. That such ordinance was unreasonable, discriminatory, and not warranted by the city charter and in contravention of the Fourteenth Amendment, respecting due process of law and the equal protection of the law. The case finally reached the Supreme Court of the United States, and the ordinance was sustained. Mr. Justice Pitney, rendering the opinion, said:

"Therefore the argument that a livery stable is not a nuisance per se, which is much insisted upon by plaintiffs in error, is beside the question. Granting that it is not a nuisance per se, it is clearly within the police power of the state to regulate the business, and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law, provided this power is not exerted arbitrarily, or with unjust discrimination, so as to infringe upon rights guaranteed by the Fourteenth Amendment. For no question is made, and we think none could reasonably be made, but that the general subject of the regulation of livery stables, with respect to their location and the manner in which they are to be conducted in a thickly populated city, is well within the range of the power of the state to legislate for the health and general welfare of the people. While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the lawmaking power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment."

The case of Commissioners of Eaton v. Covey, 74 Md. 262, 22 Atl. 266, is where a party asked for a permit to erect a frame stable in addition to the livery stable which he then had thereon, which permit the commissioners refused. He applied for a mandamus to compel its issuance. Tho town had an ordinance, under which no person could erect a building within the limits of the town without a permit from the commissioners, who had the power under the charter to pass "such ordinance as they deem necessary and beneficial for said town." In the trial court the mandamus was refused. This action was reversed by the circuit court, but on appeal the Court of Appeals of Maryland held that the action refusing the writ by the lower court was correct as the commissioners were empowered to pass such an ordinance. The court said:

"Under this power they passed an ordinance entitled 'An ordinance to regulate the erecting of new buildings within the limits of Easton.' This ordinance provides that 'it shall not be lawful for any person or persons to erect or build any dwelling house, barn, shed, stable, storehouse, warehouse, or shop within the limits of this town, or any porch on any part of the sidewalks, without first obtaining a permit from the commissioners of the town, through their clerk, to erect the same, for which the sum of one dollar shall be paid for each and every permit so granted, the same to be applied to the general expenses of the town; and any person or persons who shall violate the provisions of this ordinance shall, upon conviction thereof before a justice of the peace, be fined five dollars for each and every day from the date the building is commenced.' We think it very clear that, under a general power to pass such ordinances as the commissioners may deem necessary and beneficial to the town, the commissioners may pass any ordinance which they may judge necessary and beneficial, and it will be valid, provided it be reasonable and consonant with the general powers and purposes of the corporation, and not inconsistent with the laws and policy of the state."

The board of commissioners of the city of Dallas, by virtue of the provisions of its charter, passed the ordinance here in question, which is as follows:

"An ordinance providing regulations for the location, erection and construction of business buildings in the residence portion of the city of Dallas, providing a penalty and declaring an emergency.

"Be it ordained by the board of commissioners of the city of Dallas:

"Section 1. That it shall hereafter be unlawful for any person, firm, corporation or association of persons to locate or construct any business house or building intended or designed to be used for the barter and sale of goods, wares and merchandise of any description or character, or for the conduct therein of any business within any residence portion of the city except as hereinafter provided.

"Sec. 2. By 'a residence portion of the city of Dallas' as used in this ordinance is intended

and meant any part of said city where there are more dwelling houses than business houses within a radius of 300 feet of the place where any business house or building intended as a place for the barter and sale of goods and merchandise of any description or for the conduct of any business is sought to be erected, located or constructed.

"Sec. 3. Any person, firm, corporation or association of persons desiring to locate, erect or construct any business house or any building intended or designed as a place for the barter and sale of goods, wares and merchandise of any description, or for the conduct of any business outside of the fire limits as now or as may hereafter be designated and prescribed by ordinance of the city of Dallas, shall make an application in writing to the board of commissioners, for a permit so to do and accompany such petition or application with a written statement setting forth the exact place where the proposed building is to be located, erected or constructed with a map or other evidence showing that there are not more residences than there are business houses within a radius of 300 feet from the center of such location. If upon an examination of said application the board of commissioners are satisfied that there are more business houses than residences within a radius of 300 feet as herein prescribed and that the applicant is entitled to such permit, then such permit shall be issued.

"Sec. 4. If it shall appear that there are more residences than business houses within a radius of 300 feet of the proposed location of such building, and the applicant for such permit shall accompany such application with the consent of three-fourths of the property owners owning property within said radius of 300 feet, then and in that event the board of commissioners shall cause such permit to be issued: Provided, however, that the building for which such permit is granted must be of a design approved by the building inspector.

"Sec. 5. If an application is made for the construction of a business house in a residence portion of the city of Dallas as 'a residence portion of the city of Dallas' is defined in section 2 hereof, and it shall appear that there are in such district two or more adjoining business houses which were erected prior to the passage of this ordinance, and that the building for which the permit is desired is to be constructed, adjoining, immediately contiguous to or in extension of an existing business house, then such permit shall be granted, and in such case it shall not be necessary to accompany the application with the consent of property owners, as prescribed in section 4 hereof.

"Sec. 6. That all buildings erected under any permit granted under the terms of this ordinance shall be constructed in compliance with all ordinances and building regulations of the city of Dallas.

"Sec. 7. That any person, firm, corporation or association of persons, or agents or servants or employés of such who shall hereafter locate, erect or construct any business house within any residence portion of the city of Dallas as defined herein, or who shall proceed with the construction of such building, without first applying for and being granted a permit in compliance with the terms of this ordinance, shall be deemed guilty of a misdemeanor and upon conviction in the corporation court shall be fined not less than $50.00 nor more than $200.00 and each and every act done and performed toward the erection, construction and location of such business house without such permit shall constitute a separate offense and each and every day any such person is engaged in constructing such building without such permit and each and every day such building is permitted to remain in such residence portion of the city shall constitute a separate and distinct offense.

"Sec. 8. That all ordinances and parts of ordinances in direct conflict herewith are hereby expressly repealed.

"Sec. 9. The fact that there now is no ordinance effectually regulating the location, erection and construction of business houses in residence portions of the city creates an urgency and emergency for the immediate preservation of public peace, health and safety requiring that this ordinance take effect at once, and it is accordingly ordained that this ordinance shall be in effect from and after its passage, approval and publication as in the charter in such cases made and provided."

There is nothing in the ordinance to indicate, nor any fact aliunde the record to show, that the commissioners acted arbitrarily, or discriminated against the appellant; but it shows that they acted solely for the true welfare, comfort, and prosperity of the citizens of the city.

It is contended, in effect, that the powers of the commissioners were exceeded by providing in the ordinance that the application for a permit to erect a business house should be accompanied with the consent of three-fourths of the property owners within a radius of 300 feet from the center of said location. To support this contention the appellant cites the case of Eubanks v. City of Richmond, 226 U. S. 137, 33 Sup. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192, where an ordinance passed by authority of the statute to make regulations for building houses along certain streets, and to establish building lines, etc., prescribed that a committee to establish the line was to be determined by two-thirds of the property owners. It was held that "one set of owners determines not only the extent of use, but the kind of use, which another set of owners make of their property," and this could not be done. But is the ordinance here subject to such vice? We think not. It provides for ascertaining whether a particular district is devoted to residences or business houses and determines that the ordinance prescribes that the applicant for permit should produce as evidence a written statement setting forth the exact place where the proposed building is to be located, erected and constructed, with a map or other evidence showing that there are not more residences than business houses within a radius of 300 feet from the center of such location, and, if so, the permit shall be issued. But if there are more residences than business houses within such radius, the consent of three-fourths of said residents shall be granted. On the other hand, if said number of residents do not consent for an erection of a business house such permit will not be granted.

When all the provisions of the ordinance are considered and construed together, it was not the intention of the commissioners in passing the ordinance for three-fourths of the residents of any district to have the final decision in the matter, but it was for the commissioners to determine whether or not such permit would issue. But, if it should

be conceded that such section containing such clause be obnoxious to the Constitution and laws, it does not affect the other provisions of said ordinance prescribing the character of buildings in the residence district, and the remaining portions are valid.

[5] Testimony of several witnesses was introduced over the objection of appellant to the effect that the location of suburban stores in residence sections detracts from the comfort and convenience and destroys the value of the home. In passing the ordinance it was essential for the commissioners to consider the welfare, prosperity, and comforts of the citizens of the city, and we think the testimony tended to show the effect the building of storehouses would have in the residence section, and was admissible.

Believing that the ordinance is valid and enforceable, the judgment denying the mandamus and injunction is affirmed.

TALBOT, J., dissents.