CITY OF WICHITA FALLS et al. v. CONTINENTAL OIL CO. (No. 2984.)

Court of Civil Appeals of Texas. Amarillo. March 21, 1928.

Rehearing Denied April 18, 1928.

1. **Constitutional law** 26, 27—Federal Constitution is grant of power from states and people to general government, and Texas Constitution is limitation on Legislature's power to enact laws.

The Constitution of the United States is grant of power from states and people to the general government, while Texas Constitution is limitation on power of Legislature to enact laws, but Legislature may pass any act not in violation of some provision of state Constitution.

2. **Municipal corporations** 589—Municipalities have power to safeguard health, comfort, and general welfare of citizens by necessary and reasonable regulations.

Municipal authorities have the power to safeguard the health, comfort, and general welfare of their citizenship by such reasonable regulations as are necessary for that purpose.

3. **Constitutional law** 296(2)—Municipal corporations 601, 625—Ordinance regulating erection of business buildings in residential districts held reasonable, and not violative of due process clause (Const. art. 11, § 5).

Ordinance of city of Wichita Falls, acting under home rule charter under Const. art. 11, § 5, regulating and restricting the establishment and maintenance of business buildings in residential districts, *held* to be a reasonable regulation, and does not take private property without due process of law, in violation of the constitutional Bill of Rights.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Action by the City of Wichita Falls and others against the Continental Oil Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded, with instructions.

Weeks, Morrow, Francis & Hankerson and W. E. George, all of Wichita Falls, for appellants.

W. E. Whightsel and G. R. Pate, both of Wichita Falls, and W. B. Hamilton, of Dallas, for appellee.

RANDOLPH, J. This court, before attempting to decide the questions involved on this appeal, certified to the honorable Supreme Court of Texas the two questions below set out. We submitted, along with such questions a substantial statement of the matters of fact, shown by the record. As it is customary with the Supreme Court to publish the certificate in full, we presume it will be done in this case (see 1 S.W.(2d) 596), and therefore refer to the opinion of the Commission of Appeals, answering the questions propounded by us, for a statement of the case, making such additional statements when necessary to explain any holding.

We propounded the following questions to the Supreme Court:

"First. Is the holding of your honorable court in the Spann Case applicable to an ordinance passed by a municipal corporation created under and by virtue of the 'home rule' amendment?

"Second. If not, then is the ordinance in question in this case void, because inconsistent with the bill of rights in our state Constitution?"

The Commission of Appeals, to whom the Supreme Court referred the questions for answer, acting through Judge Speer, an-

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

swered the first question in the affirmative, not deeming it necessary to answer the second. In answering the first question, however, the Commission of Appeals limited the effect of their holding, as follows:

"Of course, we are not deciding that the decision in the Spann Case [111 Tex. 357, 235 S. W. 515, 19 A. L. R. 1387] is decisive of the validity of the ordinance in the present case, for no such question is before us. The ordinance involved in the Spann Case and that involved in the present case and the facts of the two cases are different in very substantial respects, and these differences will enter into the final consideration of the validity of the ordinance in the present case. The effect of our answer merely is that the decision of the question of the validity of the ordinance is not to be affected by the origin of the charter under the home rule amendment [Const. art. 11, § 5]."

We take it that the Supreme Court only decides by its answer to our first question that the different origins of the charter of the city of Dallas passed on in the Spann Case (111 Tex. 357, 235 S. W. 515, 19 A. L. R. 1387), and the charter here being considered in no wise renders the decision in the Spann Case inapplicable in this case, if the charter herein being considered violates any constitutional inhibition. We are therefore left to pass upon the provisions of the ordinance of the city of Wichita Falls here in question, and to determine whether or not that ordinance violates the constitutional Bill of Rights or any other constitutional inhibition.

We here set out in full the ordinance in question, as it is left out of the opinion of Judge Speer:

"Ordinance No. 419.

"Volume 3, page ——.

"An ordinance regulating and controlling the granting of permits for the erection of certain business buildings or the conduct of certain businesses within the residence districts of the city of Wichita Falls, defining a residence district, providing for a board of appeals or review, prescribing a penalty and declaring an emergency.

"Whereas, under and by virtue of the terms and provisions of the city charter express power and authority is conferred upon the board of aldermen to prescribe certain districts within the city of Wichita Falls, for the purpose of regulating and controlling the size, height, bulk and use of buildings within such districts as well as to regulate and prohibit the erection of certain business houses and the conduct of certain businesses within certain districts as well as to regulate; and

"Whereas, it is deemed advisable by the board of aldermen for the purpose of promoting the public health, safety, order, convenience, prosperity, and general welfare of the people of the city of Wichita Falls, to regulate the construction of business buildings proposed to be built or erected within the residence portions of the city, as well as to regulate and control and prohibit portions of the certain business therein which are deemed hazardous, as well as hurtful to the safety, health, good order, and welfare of the people of such districts; and

"Be it ordained by the board of aldermen of the city of Wichita Falls:

"Section I. That the terms 'residence district,' as used herein, shall mean a district lying outside of the fire limits of the city of Wichita Falls, in which a majority of the buildings are residences or dwelling houses, occupied by families as residences or places of abode, within a radius of three hundred feet from the center of any proposed business house or proposed place of business.

"Section II. That the term 'business building,' as used herein, shall mean any building or other structure, proposed to be used for the sale of goods, wares or merchandise, or that may be used as the chief place for trading or bartering or that may be used for manufacturing purpose or that may be used for advertising purposes, such as bill boards.

"Section III. When any person shall be desirous of erecting any business building in a residence district in the city of Wichita Falls, as the same is hereinabove defined, or shall be desirous of operating or conducting any kind of business for the sale, purchase or barter of goods, wares, or merchandise, other than the businesses hereinafter specially set forth in section five of this ordinance, such person or authorized agent shall make application therefor to the board of aldermen of the city of Wichita Falls, upon the application blank to be furnished by the city clerk, containing a written statement showing the exact location of the said proposed building or business to be operated or engaged in, and the general character of buildings surrounding the same, the exact plans and specifications of the building proposed to be erected, and the kind of business proposed to be operated and conducted at said location or in said proposed building, and said application shall give full information as to all of the surrounding circumstances and location of the proposed building or business to be engaged in.

"That it shall be the duty of the applicant or the person making such application, after the same has been properly filled out, to file such application with the city clerk, and it shall be the duty of the city clerk to forthwith transmit the same to the board of aldermen for consideration. That should it appear to the board of aldermen, after making the necessary examination of any application so filed, that the ordinances of the city of Wichita Falls, are contemplated to be complied with, as shown from the terms of said application, the said board of aldermen shall grant such permit to the said applicant, provided, however, if it should appear to the mayor and board of aldermen that the said building when constructed, in view of the purpose for which the proposed building is to be used, or the proposed business to be operated or engaged in, the same is likely to and will become hazardous, in light of its nearness or proximity to existing dwelling houses, and is likely to readily communicate fire or render more hazardous the fire risks of any such district, or should it appear, in view of the purposes for which the proposed building is to be used, that the health of the adjacent inhabitants or occupants of the said buildings will become greatly menaced and endangered, or

should it appear to the board of aldermen that the said building, in view of the purposes for which it is proposed to be used, would seriously offend the morals, good order, convenience, comfort, prosperity, and general welfare of the inhabitants adjacent to and residing in the said district or persons owning property therein, it shall be the duty of the board of aldermen, under such circumstances, or any or all of the same, to order a public hearing to be had for the purpose of inquiring into any and all such conditions and circumstances.

"That it shall be the duty of the city clerk to notify all persons living within the said residence district, as well as other persons affected, to appear at said hearing before the said board of aldermen, for the purpose of giving testimony touching the matter of granting such application; that in lieu of the said notice to be given by the said city clerk, the board may order that a public notice thereof shall be published in the official newspaper of the city of Wichita Falls, being a newspaper of general circulation, notifying all persons affected to appear and be heard in person or by attorney or agent; that all such persons, including the applicant, shall be given a full and fair hearing before the board on all matters touching the granting of said permit. That the city clerk shall issue process to all persons to appear and give testimony at said hearing, upon the request of the applicant, his agent or attorney, as well as upon the request of any person whose property may be affected by the granting of the said permit. That the said board of aldermen may continue the said hearing from day to day until all the facts have been, to their satisfaction, fully developed.

"Section IV. That it shall be the duty of the board of aldermen, within a reasonable time after the conclusion of said hearing, to make an order upon any such application so heard. That the board of aldermen may, after hearing the evidence, deny any application so made for a permit where they deem that the granting of the same will injure the property or be hurtful to the residents of said district, as hereinabove stated, provided that all orders made upon any application shall be made in writing and the cause fully stated by the board of aldermen for the denying of the same, and provided, further, however, that the board of aldermen shall never deny any permit where it is shown by the said applicant that by making certain changes or alterations in his proposed building, or plans and specifications, the said applicant may thereby avoid injuring any adjacent property or persons residing in said district in their rights, as herein contemplated, provided, further, however, that the granting of any permit to erect a building, as provided by this section, shall never be construed to authorize the conduct or establishment of any business described in section five hereof; that as to any such business as described in said section five hereof, a separate application shall be made therefor, as provided by said section. That should the said applicant be aggrieved or dissatisfied by any order made by the board of aldermen on any application filed under this section, said applicant may appeal from any such final order to the board of appeals or review, as hereinafter provided for.

"Section V. That no person shall establish, maintain, or conduct, in a residence district of the city of Wichita Falls, as hereinabove de-

fined, any of the hereinafter described businesses without first making application to the board of aldermen and obtaining permit therefor, which application shall state the location of the said business and the particular nature of the same, and a general description of the dwellings or residences surrounding the same; that all such applications shall be made to the city clerk and addressed to the mayor and board of aldermen, and upon the filing of any such application the board of aldermen shall order a public hearing to be had on the said application, and it shall be the duty of the city clerk to notify all persons owning property or residing within said district to appear before the said board at said hearing; that in lieu of giving personal notice of the said hearing to the property owners or persons residing in said district, the city clerk may, upon the order of the board of aldermen, cause to be published in the official newspaper of the city of Wichita Falls, a newspaper of general circulation, a notice of the said hearing, at which all persons affected by the said application shall have a full and fair opportunity to appear and give testimony concerning all matters touching the said application. That after, the conclusion of the said hearing, the said board, within a reasonable time, shall make a final order concerning such application, as may be warranted by the facts; that any person aggrieved by any final order of the said board shall have the right to appeal to the board of appeals or review, as provided by section six hereof; that the businesses herein referred to are as follows, to wit:

"Hospitals, insane asylums, livery stables, steam laundries, brick yards, lumber yards, public garages, repair shops for motor vehicles, gasoline or oil filling stations, junk yards, coal yards, wood yards, stables or wagon yards for more than four mules or horses, ice manufacturing plants, cotton gins, blacksmith shops, horse-shoeing shops, wagon shops, steam sawmill or planing mill, cement products plant, cleaning and dyeing establishments, furniture factory, dance hall, oil yards for the storage of oils or gasoline, glue factory, slaughter houses, soap factory, picture show, marble yard, boiler works, storage places for hay, feed or other combustible substances, places for the manufacture of gas, dairy or any factory or manufacturing for the manufacture of gas, dairy, or any factory or manufacturing establishment the conduct of which business, in the opinion of the board of aldermen, may prove injurious to the health, safety, morals, comfort or welfare of the inhabitants of the particular residence district, in the enjoyment of their homes and the use of their property.

"Section VI. That there be and is hereby created a board to be known as the board of appeals or review, which shall be composed of three reputable citizens and tax-payers of the city of Wichita Falls, who shall hold their office for the period of one year, and who shall be appointed by the board of aldermen, in the manner provided by the city charter for the appointment of officers and before taking their office shall take the oath prescribed by the Constitution and they shall receive such compensation as may be fixed at the date of their appointment by the mayor and board of aldermen, and shall be subject to the same qualifications and disqualifications as provided by the city charter governing other officers. That the said

board, or any member thereof, may be removed from office by the order of the board of aldermen, provided that in any such case, a full statement of the reason for removal shall be given either by the mayor or the board of aldermen. That the said board shall perform the duties herein prescribed and such other duties, as may, from time to time, be ordered or directed by the board of aldermen of the city of Wichita Falls.

"Section VII. That it shall be the duty of the said board, upon application to it by any person aggrieved or dissatisfied with any order, requirement, decision or determination of the board of aldermen, concerning any application to erect any building in the residence district of the city of Wichita Falls, or to conduct any business in a residence district of the city of Wichita Falls, as hereinabove defined, to give a full and fair hearing to any such person, and the said board and each member thereof shall have the power to administer oaths and to hear testimony touching upon any order, requirement, decision or determination made by the said aldermen, and for such purpose the said board shall have the power to require the attendance of witnesses and to issue process for same, as such power is now conferred upon the said board to require process to be issued whenever applied for by any applicant or his attorney. That the mayor shall appoint the president of the said board and the said board shall provide such rules for the governing of their meetings and the order of their business as may be deemed advisable and shall fix and determine the time of hearings to be given to all persons aggrieved, provided that it shall be the duty of the person aggrieved to make application to the said board of appeals or review within five days from the date of the final order or decision complained against, unless the time is extended by the said board of appeals or review.

"Section VIII. That the said board of appeals or review shall, after said hearing, if it deems any action taken by the said board of aldermen to be inequitable or unjust, modify any such order or decision, and in all such cases they shall certify their action to the said board of aldermen, and it shall be the duty of the said board of aldermen to thereafter change their former order so as to conform to the said ruling made by the said board of appeals or review.

"Section IX. That whenever any applicant for a permit may feel aggrieved or dissatisfied by any order, requirement, or decision made by the board of aldermen, he may give notice to the board of aldermen of his intention to appeal to the said board of appeals or review, which notice shall be preserved in the records of the city clerk or other officer keeping the records, and it shall be the duty of the city clerk to notify the president of the board of appeals or review of the action taken by said applicant and to thereafter present before the said board of appeals or review, the application of the said applicant made before the board of aldermen, including all other papers filed touching the matter, and together with a substantial record of the testimony taken before the said board and the same shall be delivered to the said board of appeals or review. That the said board of appeals or review shall notify the said applicant of the date of the hearing, as well as give notice to all persons affected, as provided by the charter, provided, that a notice may be published

in the official newspaper of this city of Wichita Falls in lieu of personal notice as hereinafter provided for.

"Section X. That in all hearings had before the board of aldermen or the board of appeals or review, both of said bodies shall have the full power and authority to summon witnesses and require their attendance and punish for contempt any disobedience of their process as such power is otherwise conferred upon the board of aldermen by the charter. That all process shall be served by the chief of police or any police officer of the city of Wichita Falls; that whenever it may be impracticable upon any hearing before the board of aldermen or the board of appeals or review, in any matter wherein a hearing is required by the terms of this ordinance, to require the personal presence of all persons affected or that in case of nonresident property owners, a notice shall be published in the official newspaper of the city of Wichita Falls, being a newspaper of general circulation, notifying all persons affected, including nonresidents or absent property owners of the date of such hearing and giving a general description of the matter pending before the said board; such notice shall be published three times in the official newspaper of said city, the first of which publications shall be at least twenty days prior to the date of hearing.

"Section XI. That in all matters pertaining to an appeal to the board of appeals or review, the persons aggrieved or dissatisfied may have the right to make such appeal, provided the same is made in the manner hereinabove stated, and in addition thereto where any order is made by the board of aldermen, which may affect the rights of property owners, an appeal may be taken by at least two property owners so aggrieved by any final order made.

"That appeals shall be allowed from action of the board of aldermen only on final orders made by said board.

"Section XII. That wherever the term 'person' is used in this ordinance, the same shall mean any person or persons, association of persons, or corporation or their agents, or any servant or employee of any such person or corporation.

"Section XIII. That any person violating any of the provisions of this ordinance shall, upon conviction, be fined in any sum not exceeding $200.00; and each and every day that the provisions of this ordinance are violated shall constitute a separate and distinct offense. That in addition to the said penalty herein provided for, the right is hereby conferred and extended unto any property owner owning property in any district, where such property owner's right may be affected or invaded, by a violation of the terms of the ordinance, to bring suit in such court or courts having jurisdiction thereof and obtain such remedies as may be available at law or equity in the protection of the rights of such property owners.

"Section XIV. That wherever any applicant may be refused any permit under the terms of this ordinance, nothing herein contained shall prevent any such applicant from resorting to the courts and obtaining, by proper remedy in a court of competent jurisdiction, such orders by way of mandamus or otherwise, and bringing in review the action of the said board of aldermen or the action of the said board of ap-

peals or review complained against by the said applicant.

"Section XV. That for the purpose of preserving a record of hearing given on all applications filed with the board of aldermen or the board of appeals or review, a substantial statement of the evidence heard upon any such hearing shall be reduced to writing and a record kept of the same; that the city clerk shall safely keep all papers filed and other records made upon the hearings concerning the transactions of the said board of aldermen and the board of appeals or review and the same shall be made a part of the archives of his office.

"Section XVI. That this ordinance shall be deemed to be cumulative of and in addition to all other ordinances on the same or similar subjects and shall supersede pro tanto only such ordinances directly in conflict herewith; that if, for any reason, should any section, sentence or classification or any part of this ordinance be declared invalid the same shall not affect any other valid sentence, classification, or portion thereof, and should there arise at any time a controversy concerning the denial of any application and resort is taken by the applicant to the courts, and for reason should the court hold that the said applicant is entitled to said permit applied for, the same shall not affect the terms and provisions of this ordinance relating to any other application not involved in said suit, provided nothing herein shall be construed to preclude the city of Wichita Falls from appealing from the judgment or decision rendered by any court in accordance with the law regulating appeals to higher courts.

"Section XVII. This ordinance shall expressly repeal that certain ordinance passed by the board of aldermen on the 1st day of March, 1917, and being ordinance No. 239, and recorded in volume 2, page 175 of the Ordinance Records of the City of Wichita Falls, and entitled 'An ordinance providing regulations for the location, erection and construction of business buildings and business structures in the residence portions of the city of Wichita Falls, defining residence portions, providing a penalty.'

"Section XVIII. Whereas, on account of the fact that there does not exist any adequate law governing and controlling the issuing of permits and regulating business buildings or the conduct of certain businesses in the city of Wichita Falls, in residence portions of the city of Wichita Falls, and because of the great and widespread harm that is done to citizens residing in residence sections of the city due to the absence of any adequate law protecting such citizens in their property rights and enjoyment of their residences, creates an urgency and an emergency in behalf of the immediate preservation of the public health, morals, and public safety, that this ordinance become effective upon its passage, and it is accordingly so ordained that this ordinance shall become and take effect from and after its passage, as in the charter in such cases made and provided."

[1] The Constitution of the United States is a grant of power from the states and people of this nation to the general government. The Constitution of this state is a limitation upon the power of the Legislature to enact laws, but such Legislature is at liberty to pass any act which is not in violation of some provision of the state Constitution: 1 Cooley's Constitutional Limitations, p. 11, 177.

The "home rule" amendment, section 5, article 11, of the state Constitution, provides that cities having more than 5,000 inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state or of the general laws enacted by the Legislature of the state.

That the limitation placed by the article upon the power granted under a "home rule" charter was not necessary, as the municipal Legislature did not have the power to pass an ordinance in conflict with the Constitution or laws of the state, at all events, but the purpose of this act was to vest in the municipal corporations a more extended power to enable them to safeguard the life, health, comfort, and property rights of the citizens of such municipalities as should choose to operate under its provisions, cannot be questioned.

There is nothing in the above ordinance that is in conflict with the general laws of the state; neither is there any conflict between the provisions of the ordinance in question and the Constitution, unless it is repugnant to the Bill of Rights in the Constitution. This question we will now discuss.

Chief Justice Phillips, in the Spann Case, says:

"The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary. Therefore, the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security.

"Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare." Spann v. City of Dallas, 111 Tex. 357, 235 S. W. 515, 19 A. L. R. 1387.

The power to regulate the conduct and location of business and industrial plants has been, in recent years, more generally conceded by the courts of our country than formerly. The tremendous development of our cities has produced new conditions, and the problem of providing for health and comfort

of the populations of such cities becomes more and more complex and difficult. The best thought and the closest investigations of municipal authorities are taxed to the uttermost in the solution of such questions, and in determining the relief required from conditions that now threaten the congested population of such cities. We have learned many things. It may be that we have become overly critical, but, nevertheless, conditions which were borne with Indian stoicism 50 or 75 years ago have become intolerable in the present day because of our increased knowledge of what those conditions threaten.

The necessity created by new conditions must be taken into consideration by the courts. Regulations passed by municipal authorities that may have seemed unreasonable under old conditions may now be reasonably necessary under the new conditions that confront us. We cannot dispose of the questions now arising and confronting us every day by the application of rules that have become obsolete under such changed conditions.

[2] Our courts have uniformly held that municipal authorities have the power to safeguard the health, comfort, and general welfare of their citizenship by such reasonable regulations as are necessary for that purpose.

This court, in the case of Scruggs v. Wheeler, 4 S.W.(2d) 616, in an opinion by Judge Hall, has discussed, at some length, the question of such regulations, and it will not be necessary for us to recite the authorities therein cited, but a reference is here made to that opinion for such authorities.

We cite the opinion of Chief Justice Cooley, in the case of Gilbert v. Showerman, 23 Mich. 448–455, in which opinion that great jurist recognized that even the most offensive trade is allowed to be carried on in a remote place, but defines remote place as meaning remote from all other occupations or trades as would be specially injured or incommoded by its proximity.

The locality in which a particular business is attempted to be operated is recognized, in the case of Burditt v. Swenson, 17 Tex. 501, 67 Am. Dec. 665, as entering largely into the question as to whether or not that business is a nuisance, and certainly, if such business can be enjoined as a nuisance by reason of its locality, then it appears to us that municipal authorities would have the power to pass regulatory measures which would be designed to prevent or anticipate the location of such nuisances at a place where their very presence would be objectionable.

If this is true, it cannot then be said, under the sanction of the law, that the regulation of a business, by requiring its location at a point where it will not cause discomfort or annoyance to people in their homes, is an unreasonable exercise of power on the part of such authorities.

[3] The ordinance here in question is not antagonistic or inimical to the Bill of Rights, in that it takes private property without due process of law. The ordinance, in every respect, safeguards the rights of the appellee, in that the machinery is provided whereby such rights may be ascertained and protected, and provision, as a last resort, is made for invoking the aid of the courts.

We cannot conceive of the law permitting the intrusion of an objectionable business in the heart of a residential district, where such intrusion has been expressly prohibited by a municipal ordinance, because the appellee claimed the right to use its property as it saw fit. People who have built their residences remote from business are entitled to the comfort of their homes undisturbed by having such business enter into their near neighborhood, if such business interferes with their health or comfort.

The trial court, in his finding of facts, finds that the location and operation of said service station, as located, will render said neighborhood less desirable for residential purposes, in that, from æsthetic and other reasons, as shown by the record, these plaintiffs and a portion of the general public do not like to have business establishments located and conducted adjacent to, or in the neighborhood of, their homes, and further finds that the erection of said station and the conduct of said business by the defendant will, as above stated, depreciate the value of this property for residence purposes at least 20 per cent., and that the individual plaintiffs will sustain such a loss by the location and operation of said business at said point.

To us, this finding is significant. While we are not saying that the mere depreciation in the value of property will entitle a party to an injunction, yet it is a significant fact that such property for residential purposes loses largely in value by reason of the proximity of the filling station. Why is this? Evidently because it interferes with the comfort and convenience of those who reside on such homestead property, and thereby renders it less desirable for a home. As stated, parties building their homes away from the business section of a city, in order to enjoy the peace and quiet of a residential section, away from the bustle of business, are deprived of the use of their homes, according to the finding of the trial court—at least, it is rendered so much less desirable. A man who has built his home under such conditions has the right to continue in its use without the infliction of a filling station in near proximity to his property.

The trial court finds that there will be a small increase in the hazards to pedestrians using the sidewalks adjacent to the filling station, and that there will be no material obnoxious odors or fumes escaping from said service station, except such as commonly escape from all well-operated service stations,

and that there will be some extra hazard to the school children or other pedestrians who pass the premises on the way to school.

These very findings enter into the right of the residence owner to the protection of the ordinance, and render such ordinance a reasonable regulation.

As sustaining the views we have expressed above, we cite Village of Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303.

We have concluded, therefore, that the ordinance here in question is a reasonable regulation, affording the protection to the residences of the citizens of Wichita Falls from the intrusion of the businesses prohibited by said ordinance, and reverse the judgment of the trial court, and here remand this cause to the district court of Wichita county, with instructions to that court to issue its permanent writ of injunction, as prayed for in plaintiff's petition in this cause, and that said court also enter its order setting aside the former order granted by it, issuing a permanent injunction in favor of defendant and against the plaintiff.