## CONTINENTAL OIL CO. v. CITY OF WICHITA FALLS et al.

### No. 1027—5207.

Commission of Appeals of Texas, Section B.

Oct. 14, 1931.

W. B. Hamilton, of Dallas, G. R. Pate, of Fort Worth, and W. E. Whightsel, of Wichita Falls, for plaintiff in error.

W. E. George and Weeks, Morrow, Francis & Hankerson, all of Wichita Falls, for defendants in error.

RYAN, J.

The city of Wichita Falls, joined by certain property owning and taxpaying citizens of that city, brought this suit to restrain the Continental Oil Company of Texas from erecting and maintaining a service station for the retailing of oil and gas on a certain lot in said city situated in what is denominated a residence district within the meaning of an ordinance hereinafter to be noticed.

A trial was had before the court without a jury and judgment rendered that plaintiffs take nothing and that they be enjoined from interfering in any manner with the defendant oil company in the erection and lawful operation of the oil and gas service station on the property in question.

Upon appeal that judgment was reversed and the cause remanded with instructions to the court below to issue the permanent writ of injunction as prayed for in the petition. 5 S.W.(2d) 561.

The complaint in the petition consists of two counts:

First. That, based upon Ordinance No. 419 of the City of Wichita Falls, adopted August 30, 1922, entitled "an ordinance regulating and controlling the granting of permits for the erection of certain buildings or the conduct of certain businesses within the residence districts of the City of Wichita Falls, defining a residence district, providing for a board of appeals or review, prescribing a penalty and declaring an emergency," the Continental Oil Company was refused a permit to erect an oil and gas station and to conduct a retail oil and gas business on the property in question, after a full hearing and consideration, by the governing board of said city. Notwithstanding such refusal, said oil company intends to proceed and is actually proceeding with the erection and operation of said filling station, and unless restrained, will go forward with said project and operate said station contrary to said ordinance.

It was further averred that the refusal of the city's governing body to issue said permit was proper under the circumstances of the case; that the location of said station is not within the city's fire limits, but is within a residential district, as defined by the ordinance, and the location of said station and its operation there are injurious to the health, safety, morals, comfort, and welfare of inhabitants of said residence district in the enjoyment of their homes and the use of their property.

Second. That said location is situated "in the heart of a long established residential district, far removed from factories, wholesale and retail stores; that the individual plaintiffs along with numerous other citizens and property owners in Wichita Falls, a city with some sixty thousand people, have invested hundreds of thousands of dollars in homes in and around said site."

It was further averred that at numerous times there is great traffic congestion at said place; that the business proposed to be conducted there will produce great and continuous noises necessarily incident, with the operation and moving of automobiles, stopping and starting at said station for the purpose of getting gasoline, oil, and the like; that said automobiles will necessarily have to cross the sidewalks dedicated to the use of the public, thus creating a public hazard to pedestrians using the sidewalks; that said filling station will produce obnoxious fumes, odors, vapors, and smoke, increase the fire risk to houses adjacent thereto, will disturb the peace and comfort of the surrounding home owners in said residential district, greatly reduce the value of their properties, and render

the neighborhood undesirable for residential purposes, all of which consequences and conditions will be continuous.

It was further averred that said business will be a nuisance, not only of a public nature in respect to traffic, fire hazards, and the like, but more especially with respect to the individual plaintiffs and others similarly situated.

### Opinion.

■ 1. An exact copy of said ordinance is contained in the opinion of the Court of Civil Appeals [5 S.W.(2d) 561], and it is a copy (except in certain particulars, not important to note here) of Ordinance No. 742, adopted by the city of Dallas, on December 30, 1921, which has had consideration in the courts and held to be invalid.

The two ordinances (except as to such matters not pertinent here) are identical, and if the one has been declared invalid, the other should meet the same fate.

Ordinance No. 742 of the City of Dallas superseded a former building ordinance of that city, the latter having been declared void and unconstitutional by the Supreme Court in Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, on November 2, 1921.

Judge Speer of this Section of the Commission of Appeals, in answering a certified question touching the present ordinance, held that it and the one involved in the Spann Case and the facts of the two cases are different in very substantial respects, and those differences will enter into the final consideration of the validity of the ordinance in the present case. City of Wichita Falls v. Continental Oil Company, 1 S.W.(2d) 596.

Treating, as we do, the Wichita Falls Ordinance No. 419 and the Dallas Ordinance No. 742 as substantially identical, Judge Speer's comment on the differences between the one and that in the Spann Case necessarily applies to both, and their validity or invalidity are not dependent, altogether, on the holdings in the Spann Case. The ordinance in the latter is copied in the opinion of the Court of Civil Appeals (189 S. W. 999), and an inspection of it will show the differences referred to by Judge Speer.

Ordinance No. 742 came into review in City of Dallas v. Mitchell, 245 S. W. 944 (writ of error refused by the Supreme Court), because of the city's refusal to issue permit for the erection, in a residence district, of a brick building to be divided into sections and used for grocery and drug stores.

The Dallas Court of Civil Appeals held unconstitutional that portion of the ordinance relative to the securing of permits for the erection of such business buildings in the residence sections of the city because the ordinance requires a hearing at which all persons residing within 300 feet of the proposed building shall be notified to appear and testify, thereby making the granting of the permit subject to the wishes, whims, and caprices of one's neighbors, and because that character of business does not, in itself, endanger the health, safety, morals, or welfare of the community.

The court expressly stated that the remaining portions of the ordinance are not in any way involved or presented in that suit, and therefore no holding whatever is made as to their validity or invalidity.

A similar controversy, involving the right to erect a building in the city's residence section, to be used to conduct either a retail grocery store or a retail drug store, notwithstanding the ordinance, arose in City of Dallas v. Burns (Tex. Civ. App.) 250 S. W. 717 (writ of error refused), and it was again held that the city was without power to prohibit the erection of that class of building. The validity of no other portion of the ordinance seems to have been involved and no holding was made thereon.

In Marshall v. City of Dallas (Tex. Civ. App.) 253 S. W. 887 (application for writ of error dismissed for want of jurisdiction), the trial court sustained general demurrer to the petition of twenty-nine resident citizens of the city of Dallas, seeking an injunction against the city and certain of its officials restraining the issuing of building permits for the erection of buildings to be used as retail stores and oil and gas filling stations in certain residential districts of the city, far removed from its business portion, and restraining ten defendant citizens from using the building permits which had therefore been granted them, and from the erection, or attempted erection, of the buildings authorized by said permits.

It appears from the opinion of the Court of Civil Appeals, affirming the judgment below, that the petition contained no allegation showing or tending to show that those to whom permits were granted, or the others to whom it was contemplated permits would be granted, would conduct a business in a manner to constitute it a nuisance, either public or private. The court held that the businesses proposed to be conducted in the buildings under such permits are lawful and the city was without power to refuse the permits in question, and that unless there be a public or private nuisance created in the use of property (although the lawful use of one's property might be disagreeable to his neighbor and tended to diminish the value of the neighbor's property), no recovery could be had. No reference is made in the opinion to Ordinance No. 742, and the validity or invalidity thereof seems not to have been considered; the theory upon which the case was tried, was that the plaintiffs were entitled to relief against the use of property by de-

fendants disagreeable to plaintiffs and which use would diminish the value of plaintiff's property; in other words, that one has no right to so use his property as to work a damage to a nearby owner, even though the use made of the property be a lawful one.

That case is differentiated from the one now under consideration, in that here it is alleged that said businesses as conducted would constitute a nuisance, public and private, and the same is sufficient, in our opinion, to raise the issue.

In City of Dallas v. McElroy (Tex. Civ. App.) 254 S. W. 599, 601 (application for writ of error dismissed for want of jurisdiction), permit to erect a business building in a residential district was refused, as stated in the court's opinion, because "the responsible executive officers of the city of Dallas testified that the permit was declined on the ground that construction of the store building which appellee desired to erect in the location would depreciate the value of the homes of people in that vicinity." To quote further from the court's opinion: "For the protection of highly developed residential sections against the encroachment of business buildings the city of Dallas enacted a 'zoning ordinance' which constitutes the only basis for the exercise of authority by the city of Dallas and its officers in denying building permits for the erection of business structures of a kind which are not nuisances, or which, in their very nature, may not become nuisances, in residential sections of the city. Again and again this ordinance has been declared void and unenforceable by the courts of this state. It is now the settled law that the city of Dallas and its officers are not warranted in refusing a property owner a permit to build a business house in a residential district merely on the ground that other property owners in the vicinity of the proposed building object, or upon the ground that the officials of the city deem it unwise to permit the construction of such buildings in such districts."

Ordinance No. 742 was again before the court in City of Dallas' v. Urbish (Tex. Civ. App.) 252 S. W. 258, 259 (application for writ of error dismissed for want of jurisdiction). In that case permit to erect a building in which to operate a motion picture show, in a residence district, was refused upon order of a body designated as the "Board of Appeals or Review of the City of Dallas," a tribunal created under said ordinance to review the action of the mayor and board of commissioners in granting and refusing permits for the erection of business establishments in those portions of the city defined by the charter and ordinances as "residence districts."

The Court of Civil Appeals held the ordinance ineffective, because it leaves to the caprice and whim of the board of appeals or review or to the desires of nearby property owners whether or not property in any given locality may be used for a purpose not a nuisance per se, and which may be declared a public nuisance merely by reason of its location in a residential section, although in such location, under certain circumstances, it might readily become a private nuisance, subject to the orders of a court of equity at the instance of a citizen living in close proximity to it. The court further held that, conceding picture shows are subject to restriction, control, and regulation by the municipal authorities and that a picture show cannot be established or maintained until a permit is applied for and received, yet such regulation and control must be reasonable and based upon a foundation which is substantial and not upon the various expressions of choice voiced by owners of property in close proximity, and because the ordinance authorizes such procedure, it amounts to a deprivation of property without due process of law, in violation of both the federal and state Constitutions.

And in Gulf Refining Co. v. City of Dallas, 10 S.W.(2d) 151 (application for writ of error dismissed), the Court of Civil Appeals flatly held said Ordinance No. 742 to be unconstitutional and void.

If Ordinance No. 742 is unconstitutional, it necessarily follows that Ordinance No. 419 of the City of Wichita Falls, identical with it, is unconstitutional and void, and the trial court correctly so held.

We are passing upon the single question of that particular ordinance's validity, and not upon any other.

What is here said has no reference to so-called "zoning statutes" and "zoning ordinances," and we express no opinion thereon.

2. The unconstitutional ordinance therefore can impose no burden upon plaintiff in error or its property, and the case must be controlled by a determination of whether or not, under the rules of equity, the pursuit of its business should be enjoined under the ordinary law of nuisances.

The findings of the trial court, so far as pertinent are as follows:

"The erection of the proposed service station and the operation of the business which defendant will conduct thereon will not materially increase the hazards incident to the travel of automobiles by or through said station or across the streets, or around the corners in that vicinity except that there will be a small increase in hazards to pedestrians using the sidewalks adjacent to the filling station site since a necessary incident to the conduct of said business is the use of the sidewalks by customers availing themselves of the supplies offered for sale at said station.

"There will be no material obnoxious odors or fumes escaping from said proposed service station except such as commonly escape from all well operated service stations, and the same will be insignificant and will not be materially offensive to any person as far away as the nearest residence to said location.

"There will be no more noise at said station than is ordinarily incident to the stopping of automobiles and starting them again while their motors are still warm and where they start easily by reason of that fact, and such noise will not be sufficient to disturb the peace or comfort of persons at any of the surrounding residences, and such noise will not be any greater than the noise created by cars which are now passing said premises and stopping and starting again at the Boulevard stop signs now located on the East and West sides of Brook Avenue where it is crossed by Eleventh Street.

"There will be no inconvenience or discomfort to the persons residing in that vicinity by reason of the glare of automobile lights any more than already exists, by reason of the passing of cars and the turning of corners at that point at the present time.

"The defendant contemplates keeping the premises in the proposed service station in a clean, sanitary and healthful condition by washing the same with a chemical compound and with water after night; said chemical compound has no odor.

"The defendant contemplates the construction of a building which will not be unsightly; and operating the same in a proper and orderly manner.

"There will be some extra hazard to the school children or other pedestrians who pass the premises on their way to school, and up and down the sidewalk, in the City in that vicinity, but such extra hazard is not material.

"The erection of the proposed service station on the lots described in plaintiff's petition will not increase the fire hazard in that vicinity and will not increase the rate of fire insurance on any building in that vicinity.

"The erection and operation of the proposed service station by the defendant, upon the location in question, will materially depreciate the market value of the residence property in the vicinity of said location including property owned by individual plaintiffs; said depreciation will amount to at least 20% of the present market value of said property for residence purposes. In this connection however, the court finds that such station will not depreciate the value of said property for any purpose except for strictly residential purposes, and such depreciation in value caused by the location and operation of said service station at said point would be no more than would necessarily follow and be incident to the location of any other lawful business on said corner.

"The proposed location of defendant's oil and gas service station is in the heart of a long established residential district, removed from factories, wholesale and retail stores; the record discloses the relative location of retail stores and filling stations with reference to the proposed site. The individual plaintiffs along with numerous other citizens and property owners in Wichita Falls, Texas, a city with a population of sixty thousand people, have invested hundreds of thousands of dollars in homes in and around the proposed filling station site.

"The erection of said station and the conduct of said business by the defendant will, as above stated, depreciate the value of this property for residence purposes at least 20% and the individual plaintiffs will sustain such a loss by the location and operation of said business at said point.

"The location and operation of said service station at said point will render said neighborhood less desirable for residential purposes, in that from aesthetic and other reasons as shown by the record these plaintiffs and a portion of the general public do not like to have business establishments located and conducted adjacent to or in the neighborhood of their homes."

The trial court concluded that said Ordinance No. 419 of the City of Wichita Falls, in so far as it prohibits the defendant company from erecting and operating its proposed service station on the lots described in its petition, is unconstitutional and void; that said company, notwithstanding the action of the board of aldermen and board of appeals or review and building inspector in refusing a permit, has the right under the law to erect and operate its proposed service station; that such erection and operation will not constitute either a public or private nuisance; and that the mere fact that a lawful business at the location in question will depreciate the market value of the residence property for residence purposes in that vicinity is not a sufficient reason in law for denying the defendant company the use of its property for a lawful purpose.

The trial court's findings of fact are in no way set aside by the Court of Civil Appeals for insufficiency of evidence to support them, and upon them no judgment other than one for the defendant could have been rendered. The "extra hazard to school children or other pedestrians who pass the premises" is found to be "not material." The only injury found is a property injury due to depreciation in the vicinity for strictly residential purposes, but such depreciation is because of aesthetic considerations and is found to be "no more than would necessarily

follow and be incident to the location of any other lawful business on said corner."

The fact that owners have invested hundreds of thousands of dollars in homes around the proposed filling station site, and that the presence in the neighborhood of structures such as that contemplated by plaintiff in error renders less desirable, and even less valuable, their property for home purposes, does not constitute the proposed structure a nuisance so as to enjoin its construction as an unlawful interference with the rights of such home owners. The same result might follow from the construction of a number of cheap and undesirable residence cottages in the same neighborhood. The law cannot and does not undertake to deny the ordinary right of an owner to use his property as he pleases upon a consideration thus purely æsthetic, even though it does result in pecuniary loss.

If there be no public or private nuisance created in the use of property, no recovery can be had for the diminution in value of nearby property by reason of the lawful use of such property. The harm or damage is that which comes from the unlawful use of property and not from its lawful use. Marshall v. City of Dallas (Tex. Civ. App.) 253 S. W. 887.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court be affirmed.

LEDDY, J., not sitting.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.