**CITY OF DALLAS et al. v. URBISH et al.
(No. 9992.)**

(Court of Civil Appeals of Texas. Dallas. April 28, 1923. Rehearing Denied May 26, 1923.)

**1. Nuisance ⬤3(9)—Motion picture show not a nuisance per se.**

A motion picture show is not inherently a place which impairs the public health, public safety, or public morals, and it is not, therefore, a nuisance per se, subject to arbitrary denial of the rights appertaining to a legitimate business.

**2. Constitutional law ⬤296(2)—Theaters and shows ⬤2 — Ordinance regulating motion picture shows in residence districts held invalid.**

Ordinance No. 742, § 5, City of Dallas, enacted under authority of the charter of the city of Dallas, art. 2, § 3, subd. 25, and providing that certain businesses, among them motion picture shows, shall not be maintained in residence districts of the city unless a permit has been obtained from the board of commissioners, and providing no standard required to be followed in determining whether such a permit should be granted, *held* to allow an arbitrary determination of that question upon the desires of adjacent property owners and to amount to a deprivation of property without due process of law, and invalid.

**3. Theaters and shows ⬤1—Regulations of motion picture shows must be reasonable and on a substantial basis.**

Conceding that motion picture shows are subject to restriction, control, and regulation by municipal authorities, nevertheless such regulation and control must be reasonable and based upon a foundation which is substantial and not upon the various expressions of choice by adjacent property owners.

**4. Evidence ⬤471(2)—Testimony of witness as to effect of maintenance of picture show held inadmissible conclusion.**

In proceedings to enforce the issuance of a permit to erect a motion picture show and enjoin interference with its erection, testimony by a witness in answer to the question, "Will the operation of a moving picture theater at the location in question affect either the public health, morals, or education?" *held* properly excluded as being a mere conclusion and opinion of the witness.

**5. Evidence ⬤5(2)—Common knowledge that motion picture shows are places of amusement which tend to draw together indiscriminately the various elements of the community.**

It is a matter of common knowledge that motion picture shows are places of amusement which tend to draw together indiscriminately the various elements of the community in which they are located.

**6. Theaters and shows ⬤½—Picture shows do not, as matter of law, encourage excessive play or wanton waste of time and money.**

Motion picture shows are not, as a matter of law, inherently places of a kind to encourage people to indulge in excessive play or in the wanton waste of time and money.

**7. Injunction ⬤105(2)—Prosecution under invalid criminal ordinance restrained.**

Where an unlawful prosecution, under an invalid criminal ordinance, of workmen on a building, because of the failure to have a building permit, was threatened, *held* that injunction would lie to restrain such interference, injunction being the proper remedy to restrain an unlawful prosecution under a criminal ordinance

which would result in immediate property loss and to prevent a multiplicity of suits.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Suit by A. J. Urbish and others, for a writ of mandamus directed against the city of Dallas and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

J. J. Collins, Allen Charlton and Hugh S. Grady, all of Dallas, for appellants.

J. J. Eckford and George T. Burgess, both of Dallas, for appellees.

HAMILTON, J. Appellees are the owners of certain real property adjoining Oak Lawn avenue, in the city of Dallas. In April, 1922, application was made to the municipal authorities for a permit to erect a brick building upon this property. On April 26, 1922, the building inspector issued the requested building permit and, under the authority thus granted, appellees began the construction of a building on the premises. Work upon the building was prosecuted for a period of about 60 days and, when it was nearing completion, the building inspector, having ascertained that it was to be used as a place in which to operate a picture show, canceled the permit, took up the plans, and caused the arrest of workmen engaged in the construction of the building. About the same time he gave appellees notice that if they attempted to proceed with the completion of the building they themselves would be arrested. By these means work on the structure was stopped. It does not appear from the permit itself, or otherwise, what representations were made by appellees in the beginning as to what use they proposed to make of the building upon its completion.

After the work had been interfered with in the manner above indicated, appellees, on the 3d day of July, 1922, made application to the mayor and board of commissioners of the city of Dallas for a permit to erect a mercantile building on the lot, and therein stated the proposed use of the building to be for a grocery store, hardware store, etc. Plans were attached to indicate a change in the construction of the building to conform with the proposed uses specified in the application, and the application was accompanied by an affidavit in which the names of all heads of families living within a radius of 300 feet of the center of the proposed building, and and the names of all property owners within this radius, were set forth. This was to conform to the provisions of a certain ordinance governing steps to obtain a building permit in residence districts. On the 5th day of July, 1922, this application was granted, and thereafter, on July 11, 1922, still another application for a permit to complete the building was made, in which appellees disclosed a purpose to operate a picture show in the structure and sought a permit to complete the construction of the building for this specific purpose. This application, as did the former one, described the character, class, and type of buildings within a radius of 300 feet of the center of the proposed building, and was also accompanied by an affidavit giving the names of all heads of families living within such radius, and the names of all owners of property within it.

The record contains a resolution adopted by the board of commissioners upon this application for a permit to complete the building, in which resolution it was recited that the permit was sought for the purpose of completing the building and also for a permit to conduct and operate a picture show therein. The location of the building was recited to be in a "residence district" of the city of Dallas, as the term "residence district" is defined by an ordinance of the city regulating the establishment and conducting of moving picture shows within such residence district. It was recited that, in accordance with the terms of this ordinance, a hearing had been held by the mayor and board of commissioners for the purpose of determining whether or not the maintenance of the picture show in that locality would interfere with the welfare, comfort, and convenience of the community; that notice of the hearing had been given to all parties owning property within a radius of 300 feet of the proposed building, as required by this ordinance; and that after a full and fair hearing had been given to the applicant for the permit, and to the persons in the immediate vicinity to be affected by the granting or refusing of the permit, it was determined that it should be granted. It was ordered that the permit be granted, subject to the right of interested parties to appeal from the order to a body designated as the "Board of Appeals or Review of the City of Dallas," which is a tribunal created by an ordinance of the city of Dallas, under statutory authority, to review the action of the mayor and board of commissioners in granting and refusing permits for the erection of business establishments in those portions of the city defined by the charter and ordinances as "residence districts."

An appeal was prosecuted to this board by owners of property within a radius of 300 feet of the proposed building, and on a hearing before this board by such aggrieved property owners it was decreed by it that the permit should be denied, and, this action having been certified to the mayor and board of commissioners, the order granting the application was rescinded, and an order was entered conforming to the order of the board of appeals or review, and denying the application.

Application for a permit to complete the building according to a design and plan of

structure which would render it capable of being used as a picture show house having been refused, and threats of arrest and prosecution under a criminal ordinance of the city of parties who should attempt further work upon the building being continued, appellees filed a bill in the trial court seeking an injunction to restrain interference by such arrests or otherwise, and also a petition for a mandamus to compel the issuance of a permit to complete the building in conformity with the proposed plan of construction for use as a place in which to exhibit picture shows.

There is no contention that a permit to complete the building is withheld because the manner of construction or the material to be used will infract any of the police regulations governing the mere construction of buildings. The sole reason for the arrests, and threatened arrests, and the withholding of the permit was that the building was to be constructed for use as a moving picture show in a residential section of the city, and against the desires of persons who are the owners of property within a distance of 300 feet of it. The facts conclusively reveal that the structure is being erected somewhere near the middle of a block already occupied by business houses. They stand on both sides of it, and, if it is completed, it will be adjoined to these business houses of similar structure standing on the two oppoite sides of it and fronting on the same street on which appellees propose to front it. Different businesses are now being conducted in these adjacent business houses which occupy the remainder of the block.

The existing charter of the city of Dallas authorizes the municipality by ordinance duly passed "to license, tax, regulate, prevent or suppress * * * keepers of theatrical or other exhibition shows and amusements." Article 2, § 3, subsec. 25, Charter of the City of Dallas.

Under this charter grant an ordinance was enacted by the city of Dallas, and was in existence at the time of the occurrence of all the events above enumerated. This ordinance, a comprehensive one, provides, among other things, that certain businesses therein described shall not be maintained or conducted in a residence district of the city unless a permit for such purpose is obtained after application therefor is made to the board of commissioners, and after a hearing has been had with reference to it. Among the businesses to which specifically this ordinance applies are picture shows. Section 5, Ordinance No. 742, City of Dallas.

A moving picture show is defined by the city ordinance to be "any edifice used for the purpose of displaying for a paid admission fee pictures or representations of human or inanimate objects or scenes or incidents thrown upon a screen from a moving film commonly known as moving pictures, or motion pictures, in connection with which there is no stage or scenery or exhibition of dancing or acts of vaudeville." Title 10, c. 5, art. 1002-c, Ordinance, City of Dallas.

The record as a whole discloses the purpose of the city authorities in refusing to permit the construction of the building in question to be merely to prevent the operation of a picture show at this particular place, upon the ground that, under the ordinances above referred to, the city has acted within the scope of validly conferred power in refusing to permit the completion of the building.

As we understand the contention of appellant, it does not comport with the generally recognized and declared principles by which the exercise of police power in municipalities is governed and restricted. The ordinance does not set up any standard which the city is required to follow in determining whether or not the building for a picture show may or may not be erected in a residential section of the city. Since it is not disputed that in material and method of construction the building will conform to all police requirements, the ordinance virtually leaves to the caprice and whim of the board of appeals or review, or to the desires of those who own nearby property, whether or not property in any given locality may be used for the purpose which the city in this instance has denied. There is no rule of uniformity anywhere disclosed by which the right to construct such buildings in residence sections is determined. If the rights of property owners with reference to the erection of picture show buildings in residence sections of the city are to be determined by the arbitrary means for which appellants contend, then, in a given locality, a man may be denied the right to use his property in this particular way at the instance of a very few property owners, whose objections may be based upon any motive, whereas, in another locality within the city exactly similarly situated, and as to which precisely the same conditions may apply, property may be appropriated to this particular use.

The position for which appellants contend does not, in final analysis, amount to an assertion that the ordinance imposes upon its agencies the exercise of a proper discretion with reference to the peculiar circumstances affecting the right to construct a picture show in every instance. It is rather an assertion of a purely arbitrary power to consent to or prohibit such use of property in each particular locality merely at the behest of other property owners, basing their objections merely upon prospective property injury. Whether or not operation of a picture show is such a business as may be subjected to regulation which would exclude and altogether prohibit its being conducted in the

residential sections of cities, at least, may be doubtful. But we are not required in this case to determine whether or not such power resides in the city. No ordinance has been enacted to bring into action the charter grant of that authority. The question is not one of power but rather one of the manner in which the exercise of power is attempted.

[1] A picture show is not inherently a place which impairs the public health, the public safety, public morals, or the public comfort. Accordingly, it is not per se a nuisance, subject to arbitrary denial of the rights which appertain to a legitimate business. Neither are we prepared to admit that it is such an institution as may be a public nuisance merely by reason of its location in a residential section of the city; although in such location, under certain circumstances, it might readily become a private nuisance, subject to the orders of a court of equity at the instance of a citizen living in close proximity to it. Aside from any consideration of this nature, we do not think the board of appeals can put into operation the police power of the city to prevent the erection of a picture show in the midst of other business buildings in a part of the city declared to be a residential section merely because the establishment of it at such place does not conform to the desires of certain other property owners in the vicinity, and, at the same time, authorize the construction and operation of a picture show at a place situated and located with reference to residences and other property in a precisely similar way, no objection by adjacent property owners being made in the latter instance.

[2] The proposition is advanced that an ordinance which makes it unlawful to establish, maintain, or conduct a picture show in the residential portion of a town where the proposed picture show will adversely affect the public health, safety, welfare, peace, etc., is a valid exercise of police power and does not constitute a deprivation of property without due process of law. The answer to this position is that the ordinance is not of the nature reflected by appellants' description of it. It is not necessary to determine whether or not such an ordinance as would prohibit a moving picture show in a residential part of the city, the operation of which has the effects above stated, is valid, and would not constitute a deprivation of property without due process of law. An ordinance which renders the property of citizens subject to any control by the arbitrary will of the board of appeals, or the mere caprice of owners of property adjoining a given location, is not an ordinance prohibiting the establishment and operation of picture shows in the residence part of the city under circumstances affecting the public health, safety, etc. The action of the board of appeals, which appears to have been guided merely by the desires of property owners in close proximity to appellee's property, amounts to a deprivation of property without due process of law. Since the ordinance authorizes such procedure, it authorizes the taking of property in violation of the due process of law clause of both the federal and state Constitutions. 19 R. C. L. p. 867, § 169; Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; Tilford v. Belknap, 126 Ky. 244, 103 S. W. 289, 11 L. R. A. (N. S.) 708. Due process of law denies to governmental authorities, legislative, executive, or judicial, the power of invading fundamental rights by arbitrary action. Brown v. Levee Com., 50 Miss. 469.

[3] The fact that an act of the Legislature and charter provisions confer the power to enact an ordinance regulating the location of picture shows in residence parts of the city avails appellants nothing. Conceding that picture shows are subject to restriction, control, and regulation by the municipal authorities, and that a picture show cannot be established or maintained until a permit is applied for and received, yet such regulation and control must be reasonable and must be based upon a foundation which is substantial, and not upon the various expressions of choice voiced by owners of property in close proximity. The ordinance cannot empower the authorities to permit their erection in one section and prohibit their erection under the same circumstances in another like location.

[4] Our attention is called to no admissible evidence tending to show that a moving picture show located at the particular place involved would be injurious to the public health, safety, peace, and order, or the general welfare of the public in any respect. Mr. Gillespie, appellants' witness, was asked the question, "Will the operation of a moving picture theater at the location in question affect either the public health, morals, or education?" This question manifestly called for a mere conclusion and opinion of the witness. Objection was made to it, and the court properly excluded the answer sought.

[5] It is a matter of common knowledge that moving picture shows are places of amusement which tend to draw together, indiscriminately, the various elements of the community in which they are located. Men, women, and children of all ranks and stations frequent them.

[6] They are not to be classed with those places of amusement which tend to draw together only vicious and disorderly persons. and it cannot be said, as a matter of law, that they are inherently places of a kind to encourage people to indulge in excessive play, and in the wanton waste of time and money, as pool halls, and billiard halls, and places of this character do. Therefore, they cannot be declared to be nuisances per se, so as to be altogether prohibited.

There is no proof in the record of any nature tending to show that the proposed picture show will be conducted in such a manner as to injure the public morals or the public welfare in other respects. Governmental censorship over the pictures displayed, applied uniformly to all such places of amusement, is a regulation designed to prevent this very condition. There is no proof that boisterous conduct or unusual noises would accompany the operation of a picture show at the proposed location, and it is at least as plausible to presume that the operation of a picture show, including the conduct of its patrons, is quiet and orderly, as it is to presume that, on the contrary, they are noisy and indecorous. So long as the pictures themselves which are to be displayed in the building are harmless and are kept that way through proper censorship, certainly the character of the entertainment cannot be declared to be inherently vicious or hurtful. So long as the patrons are drawn indiscriminately from the inhabitants of the section of the city in which the building is located, the place cannot be stamped as a resort for vicious and idle classes; and, therefore, there cannot be applied to it the attributes which are held to belong to those resorts of which the vicious and undesirable elements are conspicuous habitués.

The regulations, restrictions, and prohibitions applied by municipalities to such places and institutions, and upheld by the courts of the country, can have no application to a business of the kind under consideration. For this reason, we do not regard the authorities and arguments pertaining to saloon regulation and control, cited by appellants, as applicable. Because of their well-known, inherently vicious tendencies, saloons came to be regarded as subject to almost any character of regulation and restriction. Before their nation-wide extinction was accomplished, none of their apologists contended that they were either useful or harmless institutions in their nature. Their representatives before courts never attributed to them intrinsically useful and meritorious qualities, and in no tribunal was recognition of such attributes ever given them under any circumstances. They were merely tolerated and severely restricted and regulated as an evil, under conditions where they could not be wholly eradicated. Their very existence came uniformly to be regarded as an affront to public order, decorum, and decency. On the other hand, picture shows, under proper censorship, might be highly useful, wholesomely entertaining, educational, and elevating, as they also, without such supervision, might become insidiously evil and demoralizing, especially since they are patronized by children and the immature.

Ultimately the case contains no assertion of a basis to support appellants' contention except whatever might be found in the right of the city, through its governing bodies, to deny the owner of property the right to construct a business house and operate a business therein within the confines of those portions of the city designated by ordinance as the residence districts. Since the right of the Legislature to authorize the city to impose such restrictions upon the lawful use of property and the right of the city to enact ordinances to achieve that purpose repeatedly has been declared invalid in the case of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, the case of City of Dallas v. Mitchell (Tex. Civ. App.) 245 S. W. 944, and City of Dallas v. Burns, 250 S. W. 717, recently decided by this court but not yet [officially] reported, the invalidity of the ordinance attempting to confer that power is not open to discussion.

[7] It is urged at some length that, in no event, could the jurisdiction of a court of equity be invoked to grant an injunction against appellants for the reason that the arrests of appellees' employees were performed in pursuance of a criminal ordinance, and that the threatened arrests were based upon such criminal ordinance, and, accordingly, appellees' proper remedy is to proceed with the construction of the building, and undertake to defeat whatever prosecutions result from the arrests.

Since, in our view, the denial of the permit was an arbitrary and unauthorized act, based upon no valid ground, no prosecution could be maintained against appellees or their employees for constructing the building in conformity with the valid regulations pertaining to the construction of business houses with reference to material, workmanship, and design. The result of the arrests constituted a direct interference with a lawful pursuit; the threatened arrests were calculated to obstruct and immediately bring about a cessation of work. A property loss to appellees thus at once directly and immediately flows from the arrests and threatened arrests. It has been held repeatedly that a court of equity may interfere by injunction to restrain an unlawful prosecution under a criminal ordinance when the effect of it is to produce an immediate property loss, and it is also well settled that an injunction will lie in such instances to prevent a multiplicity of suits. City of Austin v. Cemetery Ass'n, 87 Tex. 331, 28 S. W. 528, 47 Am. St. Rep. 114; Lossing v. Hughes (Tex. Civ. App.) 244 S. W. 560; Houston v. Richter (Tex. Civ. App.) 157 S. W. 189.

Since the record discloses that the construction of the proposed building in the location indicated would conform to all valid police regulations, and since the record as a whole reveals that the permit was withheld arbitrarily and without lawful reason, we conclude that the trial court did not err in granting the writ of mandamus.

The judgment is, therefore, affirmed.