## GULF REFINING CO. v. CITY OF DALLAS et al. (No. 10247.)

Court of Civil Appeals of Texas. Dallas. July 14, 1928.

Rehearing Denied Oct. 20, 1928.

John E. Green, Jr., and P. O. Settle, both of Houston, Alex Pope and H. B. Sanders, both of Dallas, for appellant.

J. J. Collins, City Atty., H. P. Kucera, W. Hughes Knight, and A. A. Long, Asst. City Attys., all of Dallas, for appellees.

VAUGHAN, J. Appellant, Gulf Refining Company, a private corporation, filed its petition in the court below on October 18, 1927, against the city of Dallas, its mayor, R. E. Burt, its city commissioners, Clarence S. Parker, S. E. Moss, Arthur Reinhart, and Barney Davis, its chief of police, Claude Trammel, its building inspector, Sol Gillespie, and its city attorney, J. J. Collins, alleging that it was the owner of lots Nos. 1 and 2 in block No. 8, Oak Cliff Annex addition to the city of Dallas, and that on or about July 12, 1927, it filed with the building inspector of

the city of Dallas its application and other necessary information for the purpose of securing a permit to erect a gasoline, oil, and service station, at the same time paying to the city, through its building inspector, a fee of $14, for a permit, which was granted to appellant by the building inspector of the city of Dallas on July 13, 1927, granting to appellant the authority and right to erect, maintain, and operate said service station in accordance with permit so applied for; that appellant immediately contracted for the erection of such station, purchased materials therefor, and immediately began the construction of said station, and that by July 30, 1927, the necessary excavation had been made, foundations of the building laid, and the walls thereof were well under construction before said last named date. It was further alleged that, on or about July 30, 1927, the city of Dallas, acting through its mayor and city commissioners, ordered the building inspector to advise appellant that its permit had been revoked, and the building inspector requested appellant to cease the construction of the building and to consider its permit void. Appellant further alleged that it ceased the construction of said building because it and its employees had been threatened with arrest if they did not cease said construction, and that such construction was stopped because of the fear that arrest would be made and prosecution instituted; that certain neighboring property owners, living in the community where said service station was under construction, filed a protest with the city commissioners of the city of Dallas, objecting to the permit that had theretofore been issued to appellant and the construction by appellant of said filling station; that, after appellant had proceeded with the work of construction as above alleged, and without notice to appellant, said city commission held an open hearing upon the question, whether or not appellant's permit should be revoked; that said hearing resulted in an order being entered by said commission revoking the permit that had theretofore been granted appellant for the construction of said filing station, and the notice of the result of said hearing on said protest given to appellant, as above stated.

Appellant challenged the constitutionality of an ordinance No. 1087 of the city of Dallas, entitled "An ordinance providing for the issuance of permits for the erection of retail stores in the residence portions of the city and the issuance of permits for the erection of oil stations and garages in the city, and providing for a general penalty for a violation of rules promulgated by the Park Board and providing for other regulations and declaring an emergency", on the ground that same violates sections 17 and 19 of article 1, and section 1 of article 5 of the Constitution of the state of Texas, and also violates the Fourteenth Amendment of the Constitution of the United States, in that said ordinance unreasonably interferes with the rights of property as guaranteed by said constitutional provisions, and specifically the constitutionality of section 5 of said ordinance No. 1087, as being violative of the above constitutional provisions:

"First, because it unreasonably interferes with the rights of property; second, is indefinite and uncertain and provides no criterion for the revocation of permits and vests the city authorities with arbitrary powers; third, it attempts to invest the Building Inspector with judicial authority to pass upon and adjudicate the effect of restrictions contained in deeds prohibiting the issuance of permits; fourth, it invests the Building Inspector with authority to refuse or deny a permit on grounds which may not come within the police powers of the city; fifth, it fails to provide notice to the licensee of a hearing upon the question as to whether or not a permit should be revoked; sixth, it fails to provide any method of appeal from the decisions of the Building Inspector as to whether or not a permit should be granted or revoked; seventh, it makes a violation of the restrictions contained in a deed between private parties a penal offense, punishable by fine,"

—for all of which reasons appellant contends that said section 5 is unconstitutional and void.

The city of Dallas by its answer presented, first, a plea in abatement to appellant's petition, in which it alleged that the lots in question were subject to certain building restrictions, and that the proposed building of an oil station would violate the restrictive covenants running with the title to the property in the addition, and that the property owners in said addition, whose property rights would be affected, should be made parties to the suit and given an opportunity to be heard, that likewise the Interstate Suburban Realty Company, the common source of title of appellant and adjoining property owners, should have been made parties to the suit; second, specifically denied that appellant ever obtained a legal permit for the erection of the oil station, or that it in any way threatened or interfered with the construction of said building, or that appellant ever made application for permit to use the sidewalk for egress and ingress in connection with the conduct of the proposed oil station, or that, if any application was made for the building permit as alleged by appellant, denied that it was ever certified to the mayor and board of commissioners, as provided by the ordinances, and alleged that, if the permit was issued to appellant, same was issued without lawful authority and without compliance with the provisions of the ordinances governing the issuance of same.

Appellee city, answering further, pleaded the provisions of Ordinances 742, 1080, and 1262 of said city, and section 166 of the Build-

ing Code of the city of Dallas, duly enacted by its mayor and board of commissioners, alleging the failure to comply with certain terms and provisions of said ordinances as the grounds of defense to the relief sought by appellant, which terms and provisions will be hereinafter stated and discussed.

The relief sought by appellant was that appellee city, its agents, servants, and employees, be enjoined from going upon appellant's premises, or from in any manner carrying out its alleged threats of arrest or prosecution, or in any way or manner interfering with appellant, its agents, servants, or employees, in the construction, maintenance, and operation of its filling station on the property that same was being constructed. A hearing was had on appellant's petition, under notice duly issued to show cause why injunction should not be granted as prayed for, on the 11th day of December, 1927, and resulted in the judgment appealed from being rendered, denying to appellant the equitable relief prayed for, on the ground that appellant's bill was without equity, and that the injunction prayed for should be denied.

We will first dispose of appellee's counter proposition, based upon the action of the trial court in overruling appellee's plea in abatement. Said plea did not allege how or wherein said alleged restrictions were being or would be violated, or set out the deed alleged to contain such restrictions or in detail the restrictions therein referred to, or show how and wherein Interstate Suburban Realty Company was a necessary party defendant to the suit. It should be borne in mind that appellant's suit was one for injunction, and the Interstate Suburban Realty Company was not in any way a party against whom injunctive relief was being sought. Appellant alleged that it had obtained a permit, duly issued by appellee city, authorizing appellant to construct the oil station in question; that appellee city, acting through its agents, servants, and employees had assumed to revoke the permit, and had directed the work of constructing said oil station to cease and threatened to arrest and institute criminal prosecution against appellant, its agents, servants, and employees, if they should continue the construction of said oil station. No charge was made that the Interstate Suburban Realty Company was a party to or responsible for any of the acts complained of, on which appellant based its right for the relief sought. Therefore it does not appear why that company should be brought in as a party defendant. Furthermore, appellant's suit was not primarily designed for an interpretation of restrictions, though that was a matter incidental to the issues presented by appellant's petition. Appellant alleged that the restrictions contained in the deed had been complied with, and the fact that appellee city under oath differed with appellant as to the effect of the alleged restrictions would not in our judgment constitute a proper basis for a plea in abatement. We are therefore of the opinion that the court did not err in overruling said plea.

The petition alleged the permit to have been duly issued and threatened interference with appellant's action thereunder by the police with threats of arrest. No remedy at law was sought. Appellee excepted on the ground that appellant had a remedy adequately sufficient in law, but did not set out how or wherein such remedy existed, further than by prosecuting an appeal in the event of a conviction based upon such arrest and prosecution. Appellant's property rights were interfered with and involved to the extent of the right to use its property. It was evident that appellant's servants and agents were about to be arrested. There was no lawful remedy available to appellant to avoid such arrest, and protection therefrom could only be secured by injunction. The remedy by mandamus was not available to appellant as the permit had been, as alleged by appellant, duly issued, and it was only the acts alleged against appellee city, its agents, servants, and employees, after the issuance of same and work of construction had begun, that appellant based its right to the equitable relief. All the relief that could have been afforded appellant by way of mandamus would have been the issuance of a permit. Appellant was content with the permit issued, and the object of its suit was to enjoin appellee city, its employees, agents and servants, from interfering with it in constructing the improvements to which said permit related. It is apparent that, not only by virtue of the existence of the alleged permit, but that in addition thereto the attack on the ordinance under which arrest was threatened, injunction was not only the proper but the sole remedy or method of judicial procedure available to appellant to prevent the alleged illegal interference with its right to improve and use its property as a filling station. Therefore the relief sought merely extended to restraining appellee city from interfering with appellant in the construction of the filling station, begun and prosecuted to quite an appreciable extent under the existing permit. Anzalone v. Metropolitan District Commission, etc., 257 Mass. 32, 153 N. E. 325, 47 A. L. R. 897; Brownlow v. O'Donoghue Bros., 51 App. D. C. 114, 276 F. 636, 22 A. L. R. 939 (Ann. p. 942); Goodfellow, etc., v. Commission, 163 Mich. 249, 128 N. W. 410, 30. L. R. A. (N. S.) 1074; Wood v. City of Richmond, 148 Va. 480, 138 S. E. 560; Bielecki v. City of Port Arthur (Tex. Civ. App.) 2 S.W.(2d) 1007. The trial court did not err in holding that mandamus was not the remedy available to appellant, and that injunction was its proper remedy.

We find that the excerpt from the allega-

tions of appellant's petition, supra, were established by the evidence, and, in addition thereto: That the contractor employed by appellant to erect said filling station had begun work on the building before July 30, 1927, when appellee city attempted to revoke the permit issued to appellant for the erection of the building, and that the following work had been actually begun: The concrete foundation and footing were all in; the water was in; telephones installed; brick for the completion of the job had been pur-·chased and was on the ground; the brick work was almost to the top of the window frame of the first story; special steel I-beams, which could be used only in the construction· of this particular building, had been pur-·chased and delivered; contract had been let for the plumbing and part of it paid for; contract for the brick work had been let and partly paid for, and contract had been made for the wiring. That actual expenditures had been made in the sum of approximately $2,000, and binding contracts had been enter-·ed into which called for the expenditure of larger amounts which probably would have to be complied with. That, in the same addition in which the proposed service station was to be erected, there were other oil stations, as well as numerous other business houses. That the tract of ground on which appellant's service station was under construction was a triangular piece of property, located at the intersection of King's Highway and Davis street, in the city of Dallas, and bordering about 195.9 feet on King's Highway and about 245.7 feet on Davis street; that the proposed filling station was to be two stories in height, to be entered by driveway running from King's Highway through to Davis street. That a sidewalk for ingress and egress to and from the building was to be built from King's Highway to·the proposed building. That no means of entrance was provided for or contemplated whereby the station could be entered, other than from King's Highway or Davis street; no means being provided whatever from the tip of the triangular piece of property, it being planned that lawn and hedges would be planted and maintained upon the driveway extending from King's Highway to Davis street and the tip of the triangular piece of property. We further find that immediately across the alley from the proposed filling station there was a fruit stand about 30x20 feet in dimensions and abutting on the sidewalk; that immediately across King's Highway from the proposed station there was a chicken garden, abutting 50 or 60 feet on King's Highway, but having its entrance on Davis street, and facing on that street, and that within a radius of about half a block from the proposed station there were three other filling stations, all one story in height, and maintained, respectively, by the Texas Company, the Magnolia Petroleum Company, and the Simms Oil Company, all active and strong competitors of appellant; that said filling stations were erected under permits granted by appellee city; that no objection had been made to the erection and maintenance of these stations; that the above business places and appellant's lots on which its filling station was to be erected were all in the same addition and subject to the same restrictions; that Davis street for a distance of several blocks in each direction from appellant's lots was almost entirely a business section; that one Charles E. Hayden was the building inspector of appellee city on July 12, 1927, and as such inspector granted the permit in question to appellant; that, after appellant filed its application for said permit, said Hayden requested and received from appellant a copy of the plans and specifications of the proposed station and the ground plat; that, on retiring from the office of building inspector of appellee city, said Hayden left the above documents on file in his office. Said Hayden testified that he was familiar with the district where appellant's station was to be erected, and that he had not, as building inspector, revoked the permit issued by him to appellant, but merely advised the appellant company, after the erection of said station was under headway, that the city commission had revoked the said permit. He further testified that map of the district had been made by one of the subordinates in his office under his supervision, and that it had been checked up, and after such checking the permit had been issued; that appellant had complied with all requirements and had not misrepresented any detail or fact, or attempted in any way ·to practice any fraud or make any misrepresentations in connection with application for or securing said permit.

■ Appellant's first proposition, viz.:

"The permit having been granted to appellant, and it having contracted for the construction of the station and begun the construction thereof, it had· a contractual right therein based upon such permit, and the city could not revoke same in the absence, of any showing of fraud, misrepresentation or concealment on the part of appellant,"

—we will consider and discuss as if the ordinances, under which appellee city assumed to act in the premises, were valid. The permit was issued with full knowledge of all the material facts necessary thereto to all parties. The permit provided for the erection of a building, and appellant, as the owner of the lots on which same was to be erected, incurred expenses in the construction of the building contemplated to be erected under said permit, and it would be inequitable and unjust to permit the appellee city to revoke the permit without cause, viz. the concealment of material facts or material misrepre-

sentations, or the commission of acts of fraud of any kind in obtaining the issuance of same, this because the permit was issued by the proper authorities for the erection of the filling station by appellant, and appellant thereafter made contracts and incurred liabilities thereon, acting in good faith. Appellant thereby acquired a property right in reference to which it was entitled to protection, in the absence of any one of the causes above enumerated which would authorize the permit to be revoked, or the absence of any public necessity for the revocation of same. 43 C. J. p. 394, par. 380. In the case of Buffalo v. Chadeayne, 134 N. Y. 163, 31 N. E. 443, the municipal authorities of the city of Buffalo had attempted to revoke and cancel a permit after Chadeayne had actually begun construction of the building, and had contracted for the materials entering into the structure. In passing upon the right to revoke the permit under such conditions, the court held as follows:

"As soon as he had entered upon the construction of the buildings, and incurred liabilities for the work and material, he had a property interest in them. In this right he was entitled to protection [citing numerous authorities]. * * * The defendant had entered upon the construction of his buildings, had made contracts, and incurred liabilities thereon, before the Common Council attempted to reconsider its action giving him a permit to construct of wood. A private property right had, therefore, vested in him prior to the rescission of the resolution. * * * If the Common Council could interfere and rescind its permit after a building is partially constructed, it could also rescind after it was fully completed. It would consequently follow that every person who in the past has constructed wooden buildings with the permission of the Common Council is now liable to have his permit revoked, and his buildings declared a nuisance, and abated as such. * * * It seems to us clear that it was not intended to give to the Common Council the power to deprive persons of their buildings which had previously been erected, or of those which should be thereafter erected, in whole or in part, with the permission of the Common Council; and that its power is limited to the prevention of the erection of wooden buildings in the future without its permit." ·

To the same effect is the holding in the following cases: Montefiore Cemetery Co. v. Newark, 3 N. J. Misc. Rep. 1100, 130 A. 730; Pelham View Apartments, Inc., v. Switzer, City Building Inspector, 130 Misc. Rep. 545, 224 N. Y. S. 56.

In the instant case, it was not contended, that either the city building inspector or appellant had been guilty of any fraudulent act, and the record does not disclose any other illegality or violation of the law in the issuance of the permit to appellant. It would indeed be a most incongruous situation to accord to appellee city the right to restrict enjoyment and use of private property and,

in addition thereto, the right, without a good and sufficient legal reason, to change and reverse its position as to a property owner, having acted in good faith in his efforts to comply with all requirements, so that the usefulness to him of his property rights would be destroyed. Ours is a government of law and order, designed and created to—

"* * * establish justice, insure domestic tranquillity, provide for the common defense, promote the general welfare, and secure the blessings of liberty to the peoples of this country and our posterity."

Certainly there is embraced within the excerpt from the preamble to our Federal Constitution the right to acquire property and the corresponding right to enjoy the benefits of such acquisition by the use thereof for such purposes as the owner may elect, so long as such use does not unreasonably interfere with the personal or property rights of another. It would be but a flagrant disregard of such rights to say that appellee city, acting through its building inspector, its duly constituted agent, could grant to appellant, after it had complied in good faith with the requirements of its ordinance relating thereto, a permit to erect a filling station on the lots in question, which permit had in good faith been acted upon, and thereafter proceed to revoke it without good and sufficient cause in law, exercised in a lawful manner. Even if appellant had not acted under the permit granted, there did not rest with appellee city the authority under an ex parte hearing—no notice of such hearing having been given to appellant, or an opportunity accorded it to appear at such hearing and present its side of the issue—to revoke the permit issued, and by a greater parity of reason such right to so proceed could not exist where, acting under such permit, the building authorized thereby had been partially constructed, as under such conditions important issues necessarily would have to be determined, in which appellant was vitally interested, viz. whether or not it had been guilty of any acts of fraud or of material misrepresentations or the concealment of any material, fact, or whether there existed any public necessity for the revocation of such permit, appellee, as licensee, having by such partial construction of improvements under the permit acquired a vested right therein.

In justification of its action in revoking said permit, appellee city urges, first, that the application for the building permit was not certified to the mayor and board of commissioners, as required by section 2 of Ordinance 1080; second, that no application for the use of the sidewalk or portion of the street for means of ingress and egress was ever made in conjunction with the application for said permit; third, that the mayor and board of commissioners never granted a

permit for the use of the sidewalk or portion of the street in connection with said building permit; fourth, that said permit violates section 5 of Ordinance No. 1080, which prohibits a different scheme of facing buildings on lots from that originally designated, by the plat requiring buildings to be faced on the street on which the lots have a frontage; fifth, that under Ordinance No. 742 appellant's lot is in a residence district as defined by said ordinance; sixth, that the title to the property of appellant is restricted by covenant running with the land, which requires that no building or improvement thereon shall be closer than 25 feet from the street line; seventh, that Ordinance No. 1080 absolutely prohibits the issuance of any permit for an oil station where the title to the property contains covenants restricting the use thereof to residential purposes.

■ All of the above conditions and requirements are to be presumed to have been considered and determined by the building inspector favorably to appellant before granting the permit, and conclusively so under the facts of this case, viz. partial construction under the permit in good faith, and the absence of any act of fraud in obtaining or in the issuance of the permit on the part of appellant or the building inspector.

■ Is that portion of Ordinance No. 742 of appellee city, relating to securing permits for the erection of business buildings in the residence sections of the city, valid—that is, constitutional? This provision of said ordinance is an amendment of articles 1965, 1966, and 1967 of the Revised Ordinances of appellee city, relating to the same subject-matter. The amended Ordinance No. 742 we think signally fails in removing the constitutional objections that actuated the Supreme Court in the case of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, in holding said articles 1965, 1966, and 1967, supra, unconstitutional. The vice in said Ordinance No. 742 is clearly pointed out in the following opinions: City of Dallas v. Mitchell (Tex. Civ. App.) 245 S. W. 944; City of Dallas v. Burns (Tex. Civ. App.) 250 S. W. 717; City of Dallas v. Urbish (Tex. Civ. App.) 252 S. W. 258; Marshall, etc., v. City of Dallas et al. (Tex. Civ. App.) 253 S. W. 887; City of Dallas v. McElroy (Tex. Civ. App.) 254 S. W. 599.

Ordinance No. 742, known as a "building ordinance," is not in any respect a zoning ordinance. By its terms it only confers upon the governing authorities power to grant or deny an application for a building permit as they may, in the exercise of unrestricted discretion, determine from whatever motive by which they may be actuated. By this ordinance a residence district is defined "a district lying outside the fire limits in which the majority of the buildings are residences or dwellings occupied by families within a radi-

us of 300 feet from the center of any place of proposed business," and defines business buildings to mean:

" * * * Any building or other structure proposed to be used for the sale of goods, wares or merchandise, or that may be used as the chief place of trading or bartering, or that may be used for manufacturing purposes, or that may be used for advertising purposes, such as billboards."

Ordinance No. 1262 provides that all applications for the erection of buildings to be used for ordinary retail drug stores or grocery stores or similar stores, or for gasoline and oil stations, or for garages in residence portions of the city, as such residence portions of the city are defined by Ordinance No. 742, shall be made to the building inspector of the city of Dallas with plans and specifications, etc., and Ordinance No. 742 provides that, should it appear to the building inspector, upon examination of the application:

" * * * That the same is likely to and will become hazardous in light of its nearness or proximity to existing dwelling houses (without stating any distance), and is likely to readily communicate fire or render more hazardous the fire risk of any such district, or should it appear * * * that the health of adjacent inhabitants will be greatly menaced or in danger (without laying down any rule or defining the extent of menace or danger) * * * or would seriously offend the morals, good health, convenience, comfort, prosperity and general welfare * * * of those residing in said district, or persons owning property therein,"

—it shall be the duty of the building inspector to call a public hearing and inquire into all the conditions and circumstances. It is made the duty of the building inspector, within a reasonable time after a hearing of the evidence adduced on such hearing, to—

" * * * deny any application so made for a permit where he deems that the granting of the same will injure the property or be hurtful (without saying what degree of injury, æsthetical or otherwise) to the residents of said district, as hereinabove stated."

The ordinance does not define the degree of hurt, injury, or inconvenience to make the structure an undesirable one, and the term "proximity" is not defined, but vests in the building inspector the right to exercise his own personal views in reference thereto. Neither does it require that a "public nuisance" exist in order to justify the denial of a permit on the ground that the building, or the use of it as contemplated, would be a nuisance; a public nuisance being the only kind in reference to which appellee city can exercise its prerogative, as it cannot act upon a purely private nuisance. Therefore, as enforced against appellant, the provisions of said ordinances are invalid as being in conflict with the Fourteenth Amendment of the Federal Constitution, and especially section

1 thereof, which provides, among other things, that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor deny to any person within its jurisdiction the equal protection of the laws."

See Article 1, § 19, of the Constitution of Texas; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; State v. Shippers' Compress Co., 95 Tex. 603, 69 S. W. 58.

Furthermore, we are of the opinion that said Ordinance No. 742 is void because it is violative of section 1, art. 2, of the Constitution of the state of Texas, which provides that:

"The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative to one; those which are executive to another, and those which are judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted,"

—this because the governing authorities of appellee city enacted said ordinance and conferred upon themselves and charged themselves with the enforcement and judicial interpretation and construction of it, thereby combining the legislative, executive, and judicial departments of the government of appellee city. Article 2, § 1, Constitution of Texas; Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 305; Reagan v. City of Texarkana, 238 S. W. 717 (opinion by Court of Civil Appeals); City of Texarkana v. Reagan, 112 Tex. 317, 247 S. W. 816 (opinion by Supreme Court).

We therefore hold that, under the facts, not only did the city of Dallas not have power and authority to refuse to grant the permit as applied for by appellant, but, conceding that it did have such power and authority, having granted the permit, it was not within its power to interfere with the construction by appellant of the filling station under the permit granted by said city for that purpose.

Appellee, in support of the judgment appealed from, cites the following cases decided by the Seventh Court of Civil Appeals, viz.: Scruggs v. Wheeler, 4 S.W.(2d) 616; City of Wichita Falls v. Continental Oil Co., 5 S.W.(2d) 561. In the last case cited we find the following language, which we assume to be the reason given why the honorable court determining that cause refused to follow the rule of decision announced in the Spann Case and followed by other cases above cited:

"The power to regulate the conduct and location of business and industrial plants has been, in recent years, more generally conceded by the courts of our country than formerly. The tremendous development of our cities has produced new conditions, and the problem of providing for health and comfort of the populations of such cities becomes more and more complex and difficult. The best thought and the closest investigations of municipal authorities are taxed to the uttermost in the solution of such questions, and in determining the relief required from conditions that now threaten the congested population of such cities. We have learned many things. It may be that we have become overly critical, but, nevertheless, conditions which were borne with Indian stoicism 50 or 75 years ago have become intolerable in the present day because of our increased knowledge of what those conditions threaten.

"The necessity created by new conditions must be taken into consideration by the courts. Regulations passed by municipal authorities that may have seemed unreasonable under old conditions may now be reasonably necessary under the new conditions that confront us. We cannot dispose of the questions now arising and confronting us every day by the application of rules that have become obsolete under such changed conditions."

We have carefully considered the two recent cases, supra, decided by the Seventh Court of Civil Appeals, and find ourselves unable to accept the reasons therein given as being sufficient to justify a court to depart from that which represents the established law of the land. The federal constitutional provisions, as well as the constitutional provisions of the state of Texas, cited as authority by Chief Justice Phillips in determining the questions involved in the Spann Case, were respectively duly adopted, first, by the people of the United States as a part of the organic law of our federal government, and, second, by the people of the state of Texas as a part of the organic law governing the peoples of that state, and said provisions through age have not become obsolete or inherently weak and inapplicable to the "changed conditions" pointed out in the opinion in the Wichita Falls Case, supra.

For the purpose of preserving a republican form of government and securing to the people the benefits of independent branches of government, it was declared that the three fundamental principles of government, viz. the executive, legislative, and judicial, were created, each to act independent of the other and without any encroachment upon the prerogatives of another department. It is the duty of the legislative department to enact laws, under the grant of power contained in the constitutional provisions under which legislative bodies operate, and of the judicial to apply the law in the course of judicial determination of matters in controversy, and of the executive to enforce the mandates of the law. As we understand, the doctrine of "obsolete law," as applied in some instances to the common law, has never

been recognized as applicable to a legislative enactment and certainly not to a constitutional provision by any of the courts of this country. However, if it should be conceded that that doctrine is applicable to a legislative enactment or a constitutional provision, the fact is that, whenever called upon to pass upon the question here presented, the courts of this state have uniformly upheld the principle announced in the Spann Case until the decisions were announced by the Seventh Court of Civil Appeals; therefore, it cannot be said that the rule of law recognized in the Spann Case has ever passed out of use so as to become an obsolete measure, even though the term "obsolete" were applicable to a legislative enactment or a constitutional provision, which we do not in any respect concede. It is undoubtedly the duty of courts to see to it that there is no encroachment of one of the three branches of our government upon the prerogatives to be exercised by another, and we know of no more dangerous condition that could be encouraged than the assumption by one branch of our government of the duties belonging exclusively to another, and such undoubtedly, in our judgment, would be the case when and if any part of the judicial branch assumes under any pretext to discharge the functions that belong peculiarly to that of the legislative. If the people are not satisfied with the existing conditions produced by the constitutional provisions of the state government, the remedy is with them, viz. a constitutional amendment, but it does not rest with the judiciary by enforced construction to give a meaning to the provisions of the Constitution that is in conflict with the commonly accepted meaning of that instrument.

That the thought was uppermost in the minds of the truly wise, patriotic statesmen who framed our Federal Constitution that the three great co-ordinate branches of our government should respectively be confined to discharging the duties specifically reposed in each, and one branch should not encroach upon the prerogatives of another, is unmistakably evidenced by the history of the Constitutional Convention which resulted in the formation of the Union. The views as expressed in reference thereto by George Washington, Alexander Hamilton, Edmund Randolph, Charles Pinckney, William Patterson, and other members of that Convention are preserved in the opening sentences creating the legislative, executive, and judicial branches of our federal government, viz.: Section 1, art. 1, provides:

"All legislative powers herein granted shall be vested in a Congress of the United States."

Section 1, art. 2, declares that:

"The executive power shall be vested in a President of the United States of America."

And section 1 of article 3 provides that:

"The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

It is quite significant that, in creating the legislative branch, the word "all" is used in reference to the legislative powers granted by the Constitution, while, in creating the executive branch, only the words "the executive power" are used; likewise, in creating the judicial branch, the words "the judicial power" are used. The use of the words "the legislative powers" would have been sufficient, but that no doubt should ever exist, the word "all" was used to exclude the possibility of any other co-ordinate branch of the government having the authority to exercise legislative powers in any respect—in other words, to impress that the powers to legislate should not rest anywhere except in the Congress of the United States.

Our State Constitution makes similar provisions in reference to the three co-ordinate branches of our state government, viz. section 1, art. 2, supra. Section 1, art. 3, provides:

"The legislative power of this State shall be vested in a Senate and House of Representatives."

Section 1, art. 4, provides that:

"The executive department of the State shall consist of a Governor, who shall be the chief executive officer of the State, a Lieutenant-Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General."

And section 1, art. 5, commands that:

"The judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in a Court of Criminal Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law."

Therefore, in terms unmistakable, we find it declared in our Federal and State Constitutions that the three co-ordinate branches of government characteristic of a republican form of government shall remain separate and distinct, and that the duties of one branch shall not be encroached upon by another.

A judicial tribunal has not the prerogative to perform in any respect the duties that rest under the Constitution alone with the legislative branch of our government, and, when a court refuses to enforce a constitutional provision or legislative enactment on the ground of changed conditions, or refuses enforcement on the ground that same has become "obsolete," it is but a covert way of attempting to exercise the power that exclusively belongs to the legislative department.

The importance of this question justifies

quoting the following from Donovan, Jury Trials, p. 363:

"If it has been unwisely so written, it must be corrected by the Legislature. In the meantime we must obey it, or involve ourselves in the sin of disobedience. It is ours to enforce, not to make the law. In our capacity as citizens, we may change it, if it displeases us. In that case we can elect senators and representatives, and send them to the general assembly with instructions to amend it. Until that can be done, however, let the law be honored, obeyed, and maintained by its ministers and the people, that so the principle upon which alone a government of law is possible among men, may be preserved. But let us not, so long as we need the protection of government, abandon the only ground upon which it can stand, either by acts of personal violence, or by lawless decisions of lawfully constituted courts. Both of these methods are evil; but the last is far worse than the first; for it murders the law in the name of the law, and tends to bring our social and political institutions to utter ruin."

Chief Justice Marshall, in the case of McCulloch v. State of Maryland et al., 4 Wheat. 316, at page 422 (4 L. Ed. 579) used the following language anent the same question:

"If a corporation may be employed indiscriminately with other means to carry into execution the powers of the government, no particular reason can be assigned for excluding the use of a bank, if required for its fiscal operations. To use one, must be within the discretion of Congress, if it be an appropriate mode of executing the powers of government. That it is a convenient, a useful, and essential instrument in the prosecution of its fiscal operations, is not now a subject of controversy. All those who have been concerned in the administration of our finances, have concurred in representing its importance and necessity; and so strongly have they been felt, that statesmen of the first class, whose previous opinions against it had been confirmed by every circumstance which can fix the human judgment, have yielded those opinions to the exigencies of the nation. Under the confederation, Congress, justifying the measure by its necessity, transcended perhaps its powers to obtain the advantage of a bank; and our own legislation attests the universal conviction of the utility of this measure. The time has passed away when it can be necessary to enter into any discussion in order to prove the importance of this instrument, as a means to effect the legitimate objects of the government.

"But, were its necessity less apparent, none can deny its being an appropriate measure; and if it is, the degree of its necessity, as has been very justly observed, is to be discussed in another place. Should Congress, in the execution of its powers, adopt measures which are prohibited by the constitution; or should Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not entrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say that such an act was not the law of the land. But where the law is not prohibited, and is really calculated to effect any of the objects entrusted to the government, to undertake here to inquire into the degree of its necessity,

would be to pass the line which circumscribes the judicial department, and to tread on legislative ground. This court disclaims all pretensions to such a power."

As to the decisions cited by appellee from other jurisdictions in support of its position on the question under discussion, we believe that the decisions of the Supreme Court of this state should be followed as a correct exposition of its laws, and this conclusion is supported by an opinion written by Chief Justice Marshall, in the case of Bank of Hamilton v. Lessee of Dudley, 2 Pet. 492, 7 L. Ed. 496, from which we quote as follows:

"The judicial department of every government is the rightful expositor of its laws; and emphatically of its supreme law. If in a case depending before any court, a legislative act shall not conflict with the Constitution, it is admitted that the court must exercise its judgment on both, and that the Constitution must control the Act. The court must determine whether a repugnancy does or does not exist; and in making this determination, must construe both instruments. That its construction of the one is authority, while its construction of the other is to be disregarded, is a proposition for which this court can perceive no reason."

There is no merit in appellee's contention that the permit granted to appellant was properly revoked because appellant failed to secure a permit for the use of a sidewalk contiguous to the lots on which the filling station was to be constructed. Attorneys for appellee with much zeal urged the proposition that appellant company had not, at the same time it secured the permit for the construction of the station, also secured a permit for the use of the sidewalks adjoining premises on which said station was to be constructed, and that therefore the permit was properly revoked.

By the terms of the ordinance relating to the securing of permits, granting ingress and egress over sidewalks, it is specifically provided:

" * * * Or the said applicant may make the said application in conjunction with his application to the said building inspector."

The words "said application" refer to the application for the use of the sidewalk. This application was not made. There were no sidewalks at all adjoining appellant's property. This proposition is properly reduced to two questions: First, was appellant company required to secure the permit for the use of the sidewalk at the time it secured the permit for the filling station? and, second, did such failure authorize appellee city to revoke the permit for the erection of the building? The failure to secure the permit for ingress and egress over the sidewalk was not one of the grounds in the contest filed by property owners protesting the issuance of the permit and seeking its revocation; in fact, as to this issue, the record is barren of any evidence in-

troduced in support of the complaint of the other property owners upon which the order was. entered revoking the permit granted to appellant. This issue only materialized after appellant had filed its petition, and, but for the fact that it is pressed with so much earnestness, we would not here discuss same, for there is no present necessity for the adjudication of that controversy which we think is quite premature, as no real issue can arise until application has been made for the right of ingress and egress over the sidewalks adjoining the filling station proposed to be constructed by appellant. However, we think that right would follow as a natural sequence to the granting of the permit for the construction of the filling station, this because the lesser would be included in the greater right. The city could not lawfully occupy the attitude of having granted the right to build the filling station without the corresponding right arising therefrom to use the filling station, which use could not be enjoyed without the right of ingress and egress to the filling station over the adjoining sidewalks. It would be but trifling with the rights of the property owner. The right of ingress and egress to one's property is a vested right, and cannot be destroyed without due process of law, and the granting of the permit to construct the filling station carried with it the implied authority to enter and leave the property for the purpose of carrying on the business for which the improvement thereon was to be constructed. Of course, the right of ingress and egress is one within the power of the city to reasonably regulate, and we do not mean to say that this right could be exercised without complying with reasonable regulations for the protection of pedestrians and others having the right to use the sidewalk and the street adjoining thereto. It does not rest with appellee city to so hedge the enjoyment of property with minute and numerous detailed requirements, not essential for the purpose above stated, which in effect could destroy the use of appellant's property, and such abuse of power to regulate the use of same would not be due process of law to which appellant is entitled under the Constitution, but would be the confiscation of its property by denying it the right to use same for-the purpose for which it would be only of value to appellant. Access to the public highway bordering on appellant's property is one of the necessary incidents of ownership, which right is appurtenant to the land and cannot be taken from the owner thereof, except through due process of law. Anzalone v. Metropolitan District Commission, etc., supra; Brownlow v. O'Donoghue Bros., supra; Goodfellow, etc., v. Commissioners, etc., supra; Wood v. City of Richmond, supra. Appellees pleaded that Ordinance No. 1080, supra, refers to and specifies for the purpose of its application at certain times the description of residence districts as.defined by Ordinance No. 742, supra, of the City of Dallas, and pleaded section .166 of its Building Code, viz.:

"That wherever fifty per cent or over of the lots on any street or avenue in the resident sections of the City of Dallas have been improved, and the building line of said residences on said street or avenue made permanent, all buildings hereafter erected or adjoining lots shall keep the front building line of such building at the average distance back from the front line as those already built, so that the same shall conform to the permanent building line observed by fifty per cent or over of the improved lots on said street or avenue. Provided, further, that any building hereafter erected in any block on any street or avenue in the resident section of the City must have its front building line at the average distance back from the street as the front line of the buildings already built in said block.

"a. That whenever any lots are laid off by any plat showing a frontage for said lots on any street or avenue in the resident sections of the city, all buildings erected on same shall keep their frontage on said street or avenue so as to conform to the frontage of lots shown on such plat.

"b. Before any building is constructed, a permit shall be obtained from the building inspector, and it shall be the duty of the said officer before issuing said permit to require that the provisions of this Ordinance shall be fully observed."

It was not shown by exhibits in the record, or other evidence introduced, that appellant's property is on a lot platted to face on King's Highway, other than the city of Dallas receipting for $14,. for the issuance of the permit in question, indicated that said property was on Davis street; such permit referring to the building as located at "1025 West Davis." Restrictions are most strictly construed against those urging them against the use of property by the owner thereof. There was no evidence to show that appellant's property was platted or faced on King's Highway, any more than on Davis street; the implication would be, in view of the facing of Castle Inn, directly across King's Highway from appellant's property, that it was intended that all property abutting on Davis street would face on that street. This implication is further stressed by the facts showing that Davis street on both sides for a substantial distance in either direction from appellant's property is a business section, with the houses facing on that street. Therefore, in view of the principle of strict construction against those urging restrictions, it does not appear to us that any facts were introduced to show any violation of any ordinance however valid on the part of appellant. This is largely authorized by the fact that the building inspector, the authority designated by appellee city, had construed the ordinances pleaded by said appellee as he was authorized and required to do. It will be noted that the

ordinance · pleaded makes provision only for the revocation of a permit to be made by the building inspector. The building inspector never attempted to revoke the permit in question; all attempts to revoke same being made by the mayor and board of commissioners. The Ordinance No. 742 requires a hearing at which all persons residing within 300 feet of the proposed building shall be notified to appear and testify. This provision makes the granting of a permit subject to the wishes, whims, and caprices of appellant's neighbors. Appellee pleaded, and the trial court undoubtedly was influenced in his decision by, section 5 of Ordinance No. 1080, which reads as. follows:

"That whenever any property is restricted by deed or any covenant, or under the terms of any ordinance to any particular use in the residence portions of the city, it shall be unlawful for any person to. thereafter put or attempt to put the said property to any other use than the use or uses to which the same has been so restricted. Any person violating the terms of the Ordinance shall be subject to the penalty herein provided for. And the building inspector shall refuse to grant any permit to any person to build or construct any structure to be used for any purpose other than the purposes provided by the said restrictions and in case any permit may be granted and it is discovered by the building inspector that the same is in violation of any restriction so made, the said building inspector shall revoke the said permit."

This ordinance, if valid, confers on the building inspector alone the right, after discovery by him of certain facts, to revoke the permit theretofore issued. This provision is certainly not valid. It assumes to provide that the city may make the restrictions contained in a deed the subject-matter of an ordinance to make the violation of certain restrictions a penal offense and confers on the building inspector full authority to determine and adjudicate the meaning and effect of such restriction and revoke permits if in his judgment same should violate such restrictions. The portion of the ordinance in regard to the granting, refusing, and the revocation of permits, based upon restrictions contained in a deed, is invalid, because it is too indefinite and uncertain, as an ordinance attempting to limit the right of use of private property must be definite, specific, and certain. The ordinance is further invalid, in that it vests the city authorities with unlimited and arbitrary power to revoke a permit when in their judgment it violates the restrictions contained in a deed. Such restrictions and covenants in a deed are not properly within the province of the police power of the city, being strictly private matters between private individuals, and their probable violation is a matter of no concern to the city, unless such violation is an infraction of the police power of the city.

Said ordinance contains the further vice, it attempts to vest the building inspector with judicial powers, in that he is empowered to revoke the permits if he determines that a permit violates the restriction contained in deeds, which renders it invalid, that being in contravention of our State Constitution. Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S. W. 305; Spann v. City of Dallas; City of Dallas v. Mitchell; City of Dallas v. Burns, supra; Tighe v. Osborne, 150 Md. 452, 133 A. 465, 46 A. L. R. 80; Hinman v. Clarke, 121 App. Div. 105, 105 N. Y. S. 725; R. B. Construction Co. v. Jackson, 152 Md. 671, 137 A. 278; Thille v. Board, 82 Cal. App. 187, 255 P. 294; Cain v. State, 105 Tex. Cr. R. 204, 287 S. W. 262; Green v. Jones, 5 N. J. Misc. Rep. 188, 135 A. 802; Eubank v. Richmond, 226 U. S. 137, 33 S. Ct. 76, 42 L. R. A. (N. S.) 1123, 57 L. Ed. 156; Austin v. Thomas, 96 W. Va. 628, 123 S. E. 590, 38 A. L. R. 1490; Levy et al. v. Mravlag, Mayor, 96 N. J. Law, 367, 115 A. 350; Larkin v. Schwab, 242 N. Y. 330, 151 N. E. 639; Transfer & Storage Co. v. Denver, 75 Colo. 475, 226 P. 857; Green v. Jones, 5 N. J. Misc. Rep. 188, 135 A. 802; In re Cobb, 128 Misc. Rep. 67, 217 N. Y. S. 593; Peerless Oil Co. v. Hague, 4 N. J. Misc. Rep. 148, 132 A. 332; Montefiore Cemetery Co. v. Newark, supra.

Because of the persistent attitude of the governmental agencies of appellee city, anent the several decisions of the Supreme Court of this state and of this court, holding adversely to the ordinances sought to be enforced by appellee city, as in the instant case, we feel impelled to say that, before property rights can be made subservient to the arbitrary will of a municipality, an officer or agent thereof, or the right of an owner to use his property in a lawful and ordinary manner to depend upon the unrestrained predeliction of other property owners, whose property rights are not unlawfully invaded, it will be necessary that our State Constitution be so amended as to grant such power and authority.

We are of the opinion and hold that the trial court erred in refusing appellant the injunctive relief sought. Therefore its judgment is reversed, and this cause remanded, with instructions to grant appellant the temporary writ of injunction, as prayed for, against appellees.

Reversed and remanded.